ELMORE, Judge.
 

 *308
 
 Defendant Nicholas Nacoleon Harding appeals from judgments entered after a jury convicted him of first-degree sexual offense, first-degree kidnapping, assault on a female, and assault inflicting physical injury by strangulation. He also appeals the trial court's orders requiring him to enroll in lifetime sex offender registration and lifetime satellite-based monitoring (SBM).
 

 Defendant contends the trial court erred by (1) instructing the jury on two unindicted first-degree kidnapping elements; (2) sentencing him, on double jeopardy grounds, for both kidnapping based on sexual assault and for first-degree sexual offense; (3) sentencing him for both assaults in violation of a statutory mandate requiring that only one sentence be imposed for the same conduct; (4) denying his motion to dismiss the first-degree sexual offense charge for insufficient evidence; and (5) ordering he enroll in lifetime registration and SBM on grounds that
 
 *309
 
 the trial court's findings do not support its orders, and that the trial court failed to determine the reasonableness, under the Fourth Amendment, of imposing SBM pursuant to
 
 *258
 

 Grady v. North Carolina
 
 , --- U.S. ----,
 
 135 S.Ct. 1368
 
 ,
 
 191 L.Ed.2d 459
 
 (2015). Defendant also advances (6) five separate claims of ineffective assistance of counsel (IAC) that allegedly occurred during sentencing.
 

 We hold that defendant's first four alleged errors are meritless and thus that he received a fair trial, free of error, and the sentences imposed based upon the jury convictions were proper. However, based on the first issue of defendant's fifth alleged error, we reverse the trial court's registration and SBM orders and remand for further proceedings, including a new SBM hearing. We dismiss defendant's numerous IAC claims without prejudice to his right to reassert them in a subsequent motion for appropriate relief (MAR) proceeding.
 

 I. Background
 

 On 8 September 2014, defendant was indicted for first-degree sexual offense, first-degree kidnapping, assault on a female, and assault inflicting physical injury by strangulation. At trial, the State's evidence showed the following facts.
 

 During the afternoon of 7 December 2013, Anna,
 
 [1]
 
 a twenty-two-year-old, ninety-five-pound female, was waiting at a bus stop when a stranger, defendant, struck up a conversation with her. Defendant followed Anna onto the bus, after she changed buses, and after she got off at a bus stop on Brevard Road in Asheville. Anna had never taken this route home before and started walking down Pond Road, in a non-residential and "somewhat ... deserted" area. Defendant followed about ten feet behind. Eventually, defendant caught up to Anna, and the two began walking together and talking. As they continued walking down this isolated stretch of road, they came to an area surrounded by excavation machinery and overlooking a creek about twenty feet below, and Anna stopped to take off her fleece jacket.
 

 Unexpectedly, defendant "grabbed [Anna's] hair and then ... tossed [her] over the [em]bank[ment]." When Anna got up, she tried to run away, but defendant "grabbed [her] and started beating [her] face." Anna screamed for help as she fell to the ground. Defendant pinned her body down, grabbed her throat, and "kept choking ... and hitting [her] until [she] stopped trying to fight him." Defendant agreed to stop his physical
 
 *310
 
 assault if Anna quit screaming and resisting. Anna calmed down briefly and begged defendant not to hurt her. Defendant warned Anna that he was a "mob boss," but instructed her that as long as she did what he demanded, everything would be okay. Anna started screaming again. Defendant "hit [her] in the head" and covered her mouth. When Anna bit defendant's hand, he "hit [her] again in the head multiple times." Eventually, Anna stopped resisting and defendant let her up. After threatening Anna's and her one-year-old child's life, defendant forced Anna to perform fellatio on him.
 

 Defendant then instructed Anna to sit on a nearby rock near the creek with him while she calmed down. He eventually let Anna retrieve her cell phone and watched as she texted her partner that she was going to be late coming home. Defendant demanded that Anna meet him the next day at 11:00 a.m. in front of the post office downtown and that, if she did not, he "would send somebody to take care of [her] and [her] child." Defendant then instructed Anna to stay put until he walked away and demanded her not to call the police. Once defendant was out of sight, Anna immediately called 9-1-1. Responding officers found defendant walking down a nearby road and arrested him.
 

 The State also presented Rule 404(b) evidence through the testimony of two other witnesses, Cindy and Lisa.
 
 [2]
 
 According to Cindy and Lisa, defendant had also attempted, unsuccessfully, to force himself on them only a few days apart from the incident with Anna. Defendant similarly targeted these women in the afternoon, while they were alone, attempted to befriend them and bring them to an isolated location, and demanded sexual favors. Defendant similarly warned these women that he was a "mob boss" when they refused his demands, and threatened their lives if they continued to deny him.
 

 *259
 
 Defendant presented no evidence, and the jury convicted him on all counts. The trial court consolidated the first-degree-sexual-offense and assault-on-a-female convictions into one judgment, imposing an active sentence of 276 to 392 months in prison; it consolidated the first-degree-kidnapping and assault-by-strangulation convictions into another judgment, imposing a consecutive sentence of 83 to 112 months. The trial court also ordered,
 
 inter alia
 
 , that defendant enroll in lifetime sex offender registration and SBM. Defendant appeals from the judgments, and from the registration and SBM orders.
 

 *311
 

 II. Alleged Errors
 

 On appeal, defendant contends the trial court erred by (1) instructing the jury on two first-degree kidnapping elements which were not charged in the indictment; (2) sentencing him for both first-degree kidnapping and first-degree sexual offense on the double jeopardy grounds that the kidnapping conviction was based on the underlying sexual offense; (3) sentencing him for both assault on a female and assault by strangulation in violation of statutory mandates requiring only one punishment for the same conduct; (4) denying his motion to dismiss the first-degree sexual offense charge for insufficiency of the evidence; and (5) ordering he enroll in lifetime sex offender registration and SBM on the grounds that the trial court's findings were inadequate to support such orders, and a proper
 
 Grady
 
 hearing on the reasonableness of SBM was never conducted. Defendant also asserts (6) he was denied effective assistance of counsel several times.
 

 III. Instructing on Unindicted First-Degree Kidnapping Elements
 

 Defendant first contends the trial court plainly erred by instructing the jury it could find him guilty of first-degree kidnapping based on all three elevating elements of
 
 N.C. Gen. Stat. § 14-39
 
 (b) when the indictment only charged the subsection (b) element of sexual assault. We disagree.
 

 A. Issue Preservation
 

 Defendant concedes his counsel failed to object to the instructions at trial and is thus entitled only to plain error review of this alleged error.
 
 See
 
 N.C. R. App. P. 10(b)(2), (c)(4). The State argues that defendant is precluded from plain error review in part under the invited-error doctrine because he failed to object, actively participated in crafting the challenged instruction, and affirmed it was "fine." We disagree.
 

 Even where the "trial court gave [a] defendant numerous opportunities to object to the jury instructions outside the presence of the jury, and each time [the] defendant indicated his satisfaction with the trial court's instructions," our Supreme Court has not found the defendant invited his alleged instructional error but applied plain error review.
 
 See
 

 State v. Hooks
 
 ,
 
 353 N.C. 629
 
 , 633,
 
 548 S.E.2d 501
 
 , 505 (2001) (acknowledging that the defendant at multiple times failed to object and approved the challenged instruction but nonetheless electing to review his alleged instructional error for plain error). Further, the transcript excerpt the State cites to support its participating-in-crafting-the-instructions argument concerned the subsection (a) purpose element of kidnapping, not
 
 *312
 
 any subsection (b) elements. Accordingly, we conclude this alleged instructional error is not precluded from plain error review.
 

 B. Review Standard
 

 For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings[.]
 

 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (citations, internal quotation marks, and brackets omitted).
 

 C. Discussion
 

 Kidnapping is the unlawful confinement, restraint, or removal, from one place to another, of any person over 16 years old without their consent, for one of six statutorily
 
 *260
 
 enumerated purposes.
 
 N.C. Gen. Stat. § 14-39
 
 (a) (2013). Kidnapping is elevated to the first-degree if the defendant (1) did not release the victim in a safe place, (2) seriously injured the victim, or (3) sexually assaulted the victim.
 
 N.C. Gen. Stat. § 14-39
 
 (b) (2013). "[T]he language of [N.C. Gen. Stat. §] 14-39(b) states essential elements of the offense of first-degree kidnapping...."
 
 State v. Jerrett
 
 ,
 
 309 N.C. 239
 
 , 261,
 
 307 S.E.2d 339
 
 , 351 (1983). Thus, "to properly indict a defendant for first-degree kidnapping, the State must allege the applicable elements of both subsection (a) and subsection (b)."
 

 Id.
 

 (citation omitted).
 

 "[I]t is error, generally prejudicial, for the trial judge to permit a jury to convict upon a theory not supported by the bill of indictment."
 
 State v. Brown
 
 ,
 
 312 N.C. 237
 
 , 248,
 
 321 S.E.2d 856
 
 , 863 (1984) (citations omitted);
 
 see also
 

 id.
 
 at 249,
 
 321 S.E.2d at 863
 
 (awarding new first-degree kidnapping trial under plain error review where trial court instructed on an different subsection (a) purpose theory, for which the State presented no supportive evidence, and a different subsection (b) elevating element, than those charged in the indictment). However, our Supreme Court has "found no plain error where the trial court's instruction included the [subsection (a) ] purpose that was listed in the indictment and where compelling evidence had been presented to support an additional element or elements not included in the indictment as to which
 
 *313
 
 the court had nevertheless instructed."
 
 State v. Tirado
 
 ,
 
 358 N.C. 551
 
 , 575,
 
 599 S.E.2d 515
 
 , 532 (2004) (citing
 
 State v. Lucas
 
 ,
 
 353 N.C. 568
 
 , 588,
 
 548 S.E.2d 712
 
 , 726 (2001) );
 
 see also
 

 id.
 
 at 575-76,
 
 548 S.E.2d 712
 
 , 726,
 
 599 S.E.2d at 532-33
 
 (finding no plain error where the trial court instructed on the subsection (a) kidnapping purpose theory charged in the indictment in addition to an unindicted purpose theory, on grounds that "the evidence supported both the theory set out in the indictment and the additional theory set out in the trial court's instructions").
 

 Here, the indictment only charged the subsection (b) elevating element of sexual assault. Yet the trial court instructed the jury that it could find defendant guilty if it found "the [victim] was not released by the defendant in a safe place and/or had been sexually assaulted and/or had been seriously injured." Thus, the jury was instructed on the indicted subsection (b) elevating element of sexual assault, as well as the two remaining subsection (b) elements not charged in the indictment. The jury was then supplied a special verdict sheet that separately listed all three subsection (b) elements, and the jury indicated it found defendant guilty of first-degree kidnapping based on each individual subsection (b) element.
 

 Because the instruction contained subsection (b) elements not charged in the indictment, it was erroneous.
 
 See
 

 Brown
 
 ,
 
 312 N.C. at 247
 
 ,
 
 321 S.E.2d at 862
 
 (finding error where the judge "instructed the jury that to convict of first-degree kidnapping they must find that defendant 'sexually assaulted' the victim, rather than that he failed to release her in a safe place" as the indictment charged). However, after carefully examining the record, the instruction, and the jury's verdict, we hold that defendant failed to satisfy his burden of demonstrating this instructional error amounted to plain error. The State presented compelling evidence to support the subsection (b) element of not released in a safe place, and the jury separately found defendant guilty of first-degree kidnapping based on all three subsection (b) elements.
 

 The subsection (b) element of not released in a safe place for first-degree kidnapping "require[s] a conscious, willful action on the part of the defendant to assure that [the] victim is released in a place of safety."
 
 State v. Garner
 
 ,
 
 330 N.C. 273
 
 , 294,
 
 410 S.E.2d 861
 
 , 873 (1991) (citing
 
 Jerrett
 
 ,
 
 309 N.C. at 262
 
 ,
 
 307 S.E.2d at
 
 351 ). Merely departing a premises is insufficient to effectuate a "release."
 
 See
 

 State v. Love
 
 ,
 
 177 N.C. App. 614
 
 , 626,
 
 630 S.E.2d 234
 
 , 242 (2006) (rejecting an argument that "release" merely requires a relinquishment of dominion or control over the victim, reasoning: "[I]n fact defendants may have physically left the premises, but through their active intimidation, they left the victims with a constructive presence");
 
 see also
 

 *314
 

 *261
 

 State v. Anderson
 
 ,
 
 181 N.C. App. 655
 
 , 658-60,
 
 640 S.E.2d 797
 
 , 800-02 (2007) (finding victim not released in a safe place when kidnapper left victims bound in their home after shooting his gun in the air and running out the back door, reasoning that he remained constructively present, since the victims, and later the police, were uncertain as to whether kidnapper actually relinquished the victims or vacated the premises). Additionally, an isolated location is generally not a "safe place."
 
 See
 

 State v. Burrell
 
 ,
 
 165 N.C. App. 134
 
 , 141,
 
 598 S.E.2d 246
 
 , 250 (2004) (finding adult victim not released in a safe place when kidnappers pushed him out of their vehicle around 1:30 a.m. onto the side of an interstate located in an "isolated and wooded" area).
 

 Here, the State's evidence showed that after defendant finished his assaults, he demanded Anna to meet him the next day and threatened that, if she refused, he would "send somebody to take care of [her] and [her] child." Defendant then merely departed the scene on foot, leaving Anna alone at the bottom of a rocky creek embankment under a bridge near a deserted stretch of road. Anna testified that after she watched defendant walk away, she continued to feel unsafe because she "didn't know whether [defendant] was going to come back or not." Anna further testified that when she called the police, they seemed to take a long time to arrive because she had difficulty explaining her location. No evidence indicated a conscious, willful effort on defendant's part to release Anna in a place of safety. Rather, compelling evidence was presented that, based on defendant's current and future threats, and Anna being uncertain of his whereabouts after he left, defendant may have left Anna's proximate location but remained constructively present. Compelling evidence was also presented that defendant left Anna in an isolated location. This evidence supported the subsection (b) element of not released in a safe place. Further, the jury indicated on its special verdict sheet that it separately found defendant guilty of first-degree kidnapping based on all three subsection (b) elements.
 

 Based on the overwhelming and uncontroverted evidence, and the jury's special verdict sheet indicating it found him guilty based on all three subsection (b) elements, defendant has failed to show this instructional error "had a probable impact on the jury's finding that the defendant was guilty" of first-degree kidnapping.
 
 Lawrence
 
 ,
 
 365 N.C. at 518
 
 ,
 
 723 S.E.2d at 334
 
 (citations and quotation marks omitted). We thus hold that the trial court's instructional error did not amount to plain error.
 

 IV. Sentencing on Both Kidnapping and Sexual Offense
 

 Defendant contends the trial court erred by imposing sentences for both first-degree kidnapping and first-degree sexual offense on double jeopardy grounds. The State retorts this issue is unpreserved because
 
 *315
 
 defendant failed to object and raise this constitutional double jeopardy argument below. We agree.
 

 A defendant's failure to object below on constitutional double jeopardy grounds typically waives his or her right to appellate review of the issue.
 
 See, e.g.
 
 ,
 
 State v. Davis
 
 ,
 
 364 N.C. 297
 
 , 301,
 
 698 S.E.2d 65
 
 , 67 (2010) ("To the extent defendant relies on constitutional double jeopardy principles, we agree that his argument is not preserved because constitutional questions not raised and passed on by the trial court will not ordinarily be considered on appeal." (citations, internal quotation marks, and brackets omitted) ). Further, our Rules of Appellate Procedure require a defendant to make "a timely request, objection, or motion [below], stating the specific grounds for the [desired] ruling" in order to preserve an issue for appellate review. N.C. R. App. P. 10(a)(1). Additionally, despite defendant's argument to the contrary, this Court recently reaffirmed that Rule 10(a)(1) 's issue preservation requirements apply to alleged errors at sentencing.
 
 See
 

 State v. Meadows
 
 , --- N.C. App. ----, ----,
 
 806 S.E.2d 682
 
 (2017) (deeming waived under Rule 10(a)(1) the defendant's alleged constitutional error that arose during sentencing based on her "fail[ure] to object at sentencing" (citation omitted) ).
 

 Nonetheless, defendant asks us to invoke Rule 2 of our Rules of Appellate Procedure to address the merits of his unpreserved constitutional double jeopardy argument.
 
 See
 

 *262
 
 N.C. R. App. P. 2 (granting this Court discretionary authority under exceptional circumstances to vary or suspend any of the appellate rules, including Rule 10(a)(1) 's issue-preservation requirement). After thoughtfully considering the record and this argument, we conclude that defendant has failed to satisfy his heavy burden of demonstrating that his is the "rare case meriting suspension of our appellate rules...."
 
 State v. Campbell
 
 ,
 
 369 N.C. 599
 
 , 603,
 
 799 S.E.2d 600
 
 , 603 (2017). We thus decline to invoke Rule 2 and dismiss this unpreserved argument.
 

 V. Sentencing on Both Assaults
 

 Defendant contends the trial court erred by sentencing him for both assault on a female and assault by strangulation. The State does not address the merits of defendant's argument but contends this issue is not preserved for appellate review.
 

 A. Issue Preservation
 

 Defendant concedes his trial counsel failed to object below but claims a right to appellate review on statutory mandate grounds. He
 
 *316
 
 argues in relevant part that the assault on a female statute contains a mandatory prefatory clause,
 
 see
 

 N.C. Gen. Stat. § 14-33
 
 (c) (2013) ("
 
 Unless the conduct is covered under some other provision of law providing greater punishment
 
 , any person who [assaults a female] is guilty of a Class A1 misdemeanor...." (emphasis added) ), which prohibited the trial court from punishing him for that offense since he was also punished for the higher class offense of assault by strangulation based on the same conduct. The State argues
 
 N.C. Gen. Stat. § 14-33
 
 (c) does not impose a "statutory mandate" for issue preservation purposes.
 

 "When a trial court acts contrary to a statutory mandate, the defendant's right to appeal is preserved despite the defendant's failure to object during trial."
 
 State v. Braxton
 
 ,
 
 352 N.C. 158
 
 , 177,
 
 531 S.E.2d 428
 
 , 439 (2000) (citations and quotation marks omitted). This Court has interpreted
 
 N.C. Gen. Stat. § 14-33
 
 (c) 's prefatory clause as imposing a statutory mandate that preserved for appellate review an analytically identical argument notwithstanding the defendant's failure to object below.
 
 See
 

 State v. Jamison
 
 ,
 
 234 N.C. App. 231
 
 , 237,
 
 758 S.E.2d 666
 
 , 671 (2014) (deeming preserved, absent an objection below and on statutory mandate grounds, the defendant's argument that he was improperly sentenced for both assault on a female, and for the higher class offense of assault inflicting serious bodily injury based on the same underlying conduct). While this argument implicates similar double jeopardy principles as the unpreserved allegation of constitutional error we dismissed above, under
 
 Jamison
 
 , this argument is preserved for our review.
 
 See
 

 In re Civil Penalty
 
 ,
 
 324 N.C. 373
 
 , 384,
 
 379 S.E.2d 30
 
 , 37 (1989) (citations omitted).
 

 B. Discussion
 

 We review
 
 de novo
 
 statutory construction and application issues.
 
 Jamison
 
 ,
 
 234 N.C. App. at 238
 
 ,
 
 758 S.E.2d at 671
 
 (citation omitted). While the prefatory clause of
 
 N.C. Gen. Stat. § 14-33
 
 (c) mandates that a person cannot be punished for both assault on a female and for the higher class offense of assault by strangulation, this mandate is triggered only if both assaults were based on the same "conduct."
 

 Additionally, where multiple assaults occur during one altercation may be "deemed separate and distinct," multiple sentences based on those assaults may be imposed.
 
 State v. Littlejohn
 
 ,
 
 158 N.C. App. 628
 
 , 635,
 
 582 S.E.2d 301
 
 , 307 (2003) (explaining that where multiple assault convictions arise from "one transaction, the evidence must establish 'a distinct interruption in the original assault followed by a second assault[,]' so that the subsequent assault may be deemed separate and distinct from the first" (citation omitted) ).
 

 *317
 
 In
 
 State v. Rambert
 
 , our Supreme Court identified three factors it considered in rejecting the defendant's double jeopardy argument that he was improperly sentenced for three counts of discharging a firearm into occupied property that arose from three gunshots he fired at the victim's car during a single altercation.
 
 341 N.C. 173
 
 ,
 
 459 S.E.2d 510
 
 (1995) ;
 
 see also
 

 id.
 
 at 176,
 
 459 S.E.2d at 512
 
 (concluding that "defendant was not
 
 *263
 
 charged three times with the same offense for the same act but was charged for three separate and distinct acts"). Those three factors follow: (1) "[e]ach shot ... required that [the] defendant employ his thought processes each time he fired the weapon"; (2) "[e]ach act was distinct in time"; and (3) "each bullet hit the vehicle in a different place."
 
 Id.
 
 at 176-77,
 
 459 S.E.2d at 513
 
 (citation omitted).
 

 In
 
 State v. Wilkes
 
 , we applied the
 
 Rambert
 
 Court's separate-and-distinct-act analysis in the assault context.
 
 225 N.C. App. 233
 
 , 239,
 
 736 S.E.2d 582
 
 , 587,
 
 aff'd
 
 ,
 
 367 N.C. 116
 
 ,
 
 748 S.E.2d 146
 
 (2013) (per curiam). There, the defendant was convicted and sentenced for both assault with a deadly weapon with intent to kill inflicting serious injury, and for assault with a deadly weapon inflicting serious injury, based on a single brutal altercation with his wife.
 

 Id.
 

 at 236
 
 ,
 
 736 S.E.2d at 585
 
 . On appeal, the defendant similarly argued that he was improperly convicted and sentenced for both assaults on double jeopardy grounds.
 
 Id.
 
 at 238,
 
 736 S.E.2d at 586-87
 
 . We applied
 
 Rambert
 
 's three factors to reach our holding that, because certain assault conduct required a separate thought process, they were distinct in time, and the victim sustained injuries to different parts of her body, the defendant had committed two distinct assaults.
 
 Id.
 
 at 239-40,
 
 736 S.E.2d at 587-88
 
 . We thus held the defendant's two assault convictions did not violate his double jeopardy rights.
 

 Id.
 

 Here, the assault on a female and the assault by strangulation convictions were based on different conduct. Defendant's act of pinning down Anna and choking her throat with his hands to stop her from screaming supported the assault by strangulation conviction. Defendant's acts of grabbing Anna by her hair, tossing her down the rocky embankment, and punching her face and head multiple times supported the assault on a female conviction. The trial court specifically instructed the jury on assault on a female based on this evidence.
 

 Furthermore, when applying
 
 Rambert
 
 's three factors, the two assaults were sufficiently separate and distinct to sustain both convictions. First, defendant's assaults required different thought processes. Defendant's decisions to grab Anna's hair, throw her down the embankment, and repeatedly punch her face and head required a separate thought process than his decision to pin down Anna while she was
 
 *318
 
 on the ground and strangle her throat to quiet her screaming. Second, the assaults were distinct in time. After defendant's initial physical assault, and then the strangulation, he briefly ceased his physical assault after Anna stopped screaming and resisting. But after defendant informed Anna that he was a "mob boss" and threatened her life if she refused his sexual demand, Anna screamed again, and defendant "hit [her] again in the head multiple times." Third, Anna sustained injuries to different parts of her body. The evidence showed that Anna suffered two black eyes, injuries to her head, and bruises to her body, as well as pain in her neck and hoarseness in her voice from the strangulation.
 

 The trial evidence here shows that both convictions arose not from the same conduct but from separate and distinct acts constituting different assaults. Accordingly, the trial court did not violate
 
 N.C. Gen. Stat. § 14-33
 
 (c) 's mandate by imposing sentences based on the two assault convictions. Furthermore, both assaults were consolidated with a higher class offense, and the sentences imposed were based on those higher class offenses. Thus, even assuming the two assault convictions could not support two sentences on the ground they were based on the same conduct, defendant cannot establish prejudice from this alleged sentencing error.
 

 VI. Denying Motion to Dismiss Sexual Offense Charge
 

 Defendant contends the trial court erred by denying his motion to dismiss the first-degree sex offense for insufficiency of the evidence. We disagree.
 

 A. Review Standard
 

 We review
 
 de novo
 
 the denial of a motion to dismiss for insufficient evidence.
 
 State v. Barnett
 
 ,
 
 368 N.C. 710
 
 , 713,
 
 782 S.E.2d 885
 
 , 888 (2016) (citation omitted). Such a motion is properly denied if "there is substantial evidence (1) of each essential element of the offense charged and (2) that
 
 *264
 
 defendant is the perpetrator of the offense."
 
 State v. Denny
 
 ,
 
 361 N.C. 662
 
 , 664,
 
 652 S.E.2d 212
 
 , 213 (2007) (citations and quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Brown
 
 ,
 
 310 N.C. 563
 
 , 566,
 
 313 S.E.2d 585
 
 , 587 (1984) (citation omitted). All evidence must be viewed "in the light most favorable to the State and ... all contradictions and discrepancies [resolved] in the State's favor."
 
 State v. Harris
 
 ,
 
 361 N.C. 400
 
 , 402,
 
 646 S.E.2d 526
 
 , 528 (2007) (citation omitted).
 

 B. Discussion
 

 Defendant was charged with first-degree sexual offense under
 
 N.C. Gen. Stat. § 14-27.4
 
 (2013) (recodified as
 
 N.C. Gen. Stat. § 14-27.26
 
 by
 
 *319
 
 S.L. 2015-181, § 3(a), eff. Dec. 1, 2015). Relevant here, one essential element of that crime is that the defendant "inflict[ ] serious personal injury upon the victim...."
 

 Id.
 

 § 14-27.4(a)(2)(b). Serious personal injury may be proved by showing physical injury, or mental or emotional injury,
 
 see
 

 State v. Baker
 
 ,
 
 336 N.C. 58
 
 , 64,
 
 441 S.E.2d 551
 
 , 554 (1994) (citation omitted), or a combination of both,
 
 see
 

 State v. Ackerman
 
 ,
 
 144 N.C. App. 452
 
 , 461,
 
 551 S.E.2d 139
 
 , 145 (2001).
 

 [I]n order to prove a serious personal injury based [solely] on mental or emotional harm, the State must prove that the defendant caused the harm, that it extended for some appreciable period of time beyond the incidents surrounding the crime itself, and that the harm was more than the '
 
 res gestae
 
 ' results present in every forcible rape.
 
 Res gestae
 
 results are those so closely connected to [an] occurrence or event in both time and substance as to be a part of the happening.
 

 State v. Finney
 
 ,
 
 358 N.C. 79
 
 , 90,
 
 591 S.E.2d 863
 
 , 869 (2004) (internal quotation marks omitted) (quoting
 
 Baker
 
 ,
 
 336 N.C. 58
 
 , 62-63,
 
 441 S.E.2d 551
 
 , 554 ). "In determining whether serious personal injury has been inflicted for purposes of satisfying the elements of first-degree rape, the court must consider the particular facts of each case."
 
 State v. Richmond
 
 ,
 
 347 N.C. 412
 
 , 429,
 
 495 S.E.2d 677
 
 , 686 (1998) (citation and internal quotation marks omitted).
 

 Here, evidence was presented that defendant, a forty-three-year-old male, approximately 5'10" tall with a medium build, physically and sexually assaulted Anna, a twenty-two-year-old female, approximately 5'1" tall, and weighing only ninety-six pounds. After what Anna perceived was a friendly conversation, defendant unexpectedly grabbed her and threw her down a steep, rocky embankment about ten to twelve feet below. Defendant punched Anna's face and head numerous times, straddled her when she fell to the ground, and pinned her down as he strangled her throat. After Anna stopped resisting, defendant briefly stopped his physical assault, but after she started screaming and resisting again, defendant continued punching Anna's face and head again before finally forcing her to perform oral sex on him.
 

 The State presented evidence that Anna was diagnosed with a head injury at the hospital, and that for days after the incident, Anna experienced pain throughout her body. Her head hurt "extremely bad," her neck and shoulders hurt, she suffered two black eyes and bruises on her body, she had hoarseness in her voice from the strangulation, and she had "an extremely difficult time concentrating on things." The
 
 *320
 
 incident occurred on 7 December 2013. As of Anna's trial testimony on 15 August 2016, she continues to have a hard time trusting people, has difficulty opening up to others, and is unable to maintain many friendships. Additionally, the State's evidence showed that Anna still is unable to concentrate as effectively, has difficulty remembering things, and suffers from short-term memory loss as a result of the attack, all of which have caused her problems at work.
 

 Viewing this evidence in the light most favorable to the State and giving it the benefit of all reasonable inferences arising therefrom, we conclude that the State presented substantial evidence to support the challenged element of inflicting serious personal injury. The trial court thus properly denied defendant's dismissal motion.
 

 *265
 

 VII. Ordering Lifetime Registration and SBM
 

 Defendant next contends the trial court erred by ordering him to enroll in lifetime sex offender registration and lifetime SBM on grounds that the trial court's findings do not statutorily support such orders, and that it never made a determination as to the reasonableness of SBM under the Fourth Amendment pursuant to
 
 Grady
 
 . The State does not address the merits of either argument but contends that because defendant failed to object at sentencing, he failed to preserve these issues for appellate review.
 

 A. Grounds for Appellate Review
 

 As an initial matter, defendant gave oral notice of appeal at the 19 August 2016 sentencing hearing but failed to file a written notice of appeal as required to preserve his right to appeal from an SBM order.
 
 See
 

 State v. Brooks
 
 ,
 
 204 N.C. App. 193
 
 , 194-95,
 
 693 S.E.2d 204
 
 , 206 (2010) (holding oral notice of appeal at SBM hearing is insufficient to confer appellate jurisdiction to review SBM order and requiring a defendant to file written notice of appeal pursuant to N.C. R. App. P. 3(a) ).
 

 However, on 2 May 2017, defendant filed a petition for a writ of
 
 certiorari
 
 to preserve his right to appellate review of the registration and SBM orders despite his failure to file a timely written appeal. Under Appellate Rule 21, this Court may issue a writ of
 
 certiorari
 
 "in appropriate circumstances ... to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action[.] ..." N.C. R. App. P. 21(a)(1). Because we deem defendant's first challenge concerning the sufficiency of the trial court's findings to support its registration and SBM orders to be meritorious, in our discretion, we allow defendant's petition to review these orders.
 

 *321
 

 B. Issue Preservation
 

 In
 
 State v. Johnson
 
 , we held that despite the defendant's failure to object at sentencing, his right to appeal an SBM order was nonetheless preserved on statutory mandate grounds because we determined the issue he raised, that the trial court's erroneous "aggravating offense" finding did not support the imposition of lifetime registration, implicated the trial court's failure to follow
 
 N.C. Gen. Stat. § 14-208.23
 
 's mandate as to when a defendant "shall" maintain lifetime registration. --- N.C. App. ----, ----,
 
 801 S.E.2d 123
 
 , 128 (2017). Accordingly, under
 
 Johnson
 
 , notwithstanding defendant's failure to raise this issue at sentencing, his argument that the trial court's findings were insufficient to support its lifetime registration and SBM orders is preserved for appellate review. Because we hold that the registration and SBM orders must be reversed and remanded for resentencing based on this error, defendant's
 
 Grady
 
 argument becomes moot.
 

 C. Discussion
 

 Defendant contends that although the trial court found that he was neither a (1) sexually violent predator, nor (2) a recidivist, and that (3) none of his convictions were "aggravated offenses" under
 
 N.C. Gen. Stat. § 16-208.6
 
 (1a), nor (4) involved a minor, it nonetheless erroneously ordered him to enroll in lifetime sex offender registration and SBM.
 

 "On appeal from an order imposing satellite-based monitoring, this Court reviews 'the trial court's findings of fact to determine whether they are supported by competent record evidence, and we review the trial court's conclusions of law for legal accuracy and to ensure that those conclusions reflect a correct application of law to the facts found.' "
 
 State v. Springle
 
 ,
 
 244 N.C. App. 760
 
 , 765,
 
 781 S.E.2d 518
 
 , 521-22 (2016) (citations omitted). Additionally, "[a]lleged statutory errors are questions of law and as such, are reviewed
 
 de novo
 
 ."
 
 Johnson
 
 , --- N.C. App. at ----,
 
 801 S.E.2d at 128
 
 (citation and quotation marks omitted).
 

 Where, as here, a trial court finds a person was convicted of a "reportable conviction," it must order that person to maintain sex offender registration for a period of at least thirty years.
 
 N.C. Gen. Stat. § 14-208.7
 
 (a) (2013). If a trial court also finds that the person has been classified as a sexually violent predator, is a recidivist, or was convicted
 
 *266
 
 of an aggravated offense, it must order lifetime registration.
 
 N.C. Gen. Stat. § 14-208.23
 
 (2013). Where a trial court enters an order imposing lifetime registration based upon an erroneous finding that a conviction constituted a statutory aggravating offense, we have reversed the order and remanded to the trial court "for entry of a registration order based upon proper findings."
 
 Johnson
 
 , --- N.C. App. at ----,
 
 801 S.E.2d at 130
 
 .
 
 *322
 
 Under
 
 N.C. Gen. Stat. § 14-208
 
 .40A, before a trial court may impose SBM, it must make factual findings determining whether
 

 (i) the offender has been classified as a sexually violent predator pursuant to G.S. 14-208.20, (ii) the offender is a recidivist, (iii) the conviction offense was an aggravated offense, (iv) the conviction offense was a violation of G.S. 14-27.2A or G.S. 14-27.4A, or (v) the offense involved the physical, mental, or sexual abuse of a minor.
 

 N.C. Gen. Stat. § 14-208
 
 .40A(b) (2013) (amended in 2015 and 2017). "[T]he five categories of offenders referenced [above] constitute the only types of offenders that the Generally Assembly has made eligible for enrollment in the SBM program."
 
 State v. Hadden
 
 ,
 
 226 N.C. App. 330
 
 , 335,
 
 741 S.E.2d 466
 
 , 469 (2013) (citations omitted).
 

 Because Anna was not a minor, the first three categories are relevant here. As to those categories, a trial court "shall order" lifetime SBM if it finds that the offender (1) "has been classified as a sexually violent predator," (2) "is a recidivist," (3) or "has committed an aggravated offense[.]"
 
 N.C. Gen. Stat. § 14-208
 
 .40A(c) (2013). However, where a trial court finds an offender does not fall within any of the five categories, it is error to impose SBM.
 
 Hadden
 
 ,
 
 226 N.C. App. at 335
 
 ,
 
 741 S.E.2d at 469
 
 (vacating SBM order and remanding for reconsideration where the trial court "expressly found that defendant did not fall within any of the [five] statutorily enumerated categories of offenders requiring monitoring, but nonetheless ordered defendant to enroll in the SBM program due to [its findings of other non-statutorily listed factors]").
 

 Here, in its registration and SBM orders, the trial court found that defendant had not been convicted of an aggravated offense, was not a recidivist, nor had he been classified a sexually violent predator. But the trial court nonetheless ordered that defendant enroll in lifetime registration and lifetime SBM. As these findings, standing alone, do not support either lifetime registration, or enrollment in SBM for any duration, we reverse the trial court's registration and SBM orders.
 

 As defendant correctly argues, this Court has held that first-degree sexual offense is not an "aggravated offense" under
 
 N.C. Gen. Stat. § 14-208.6
 
 (1a) triggering lifetime registration or SBM.
 
 See
 

 State v. Green
 
 ,
 
 229 N.C. App. 121
 
 , 129,
 
 746 S.E.2d 457
 
 , 464 (2013). But the sentencing hearing transcript does not indicate whether the State and trial court were under a misapprehension that first-degree sexual offense constituted such an aggravating offense. At sentencing, but during its request that the trial court run the sentences consecutively, the State argued in relevant part:
 

 *323
 
 [T]he defendant's behavior in this situation shows that he is a very dangerous individual. He is a threat to the members of our community. He chose to assault a young, very small, defenseless person....
 

 Also, the fact that the 404(b) evidence from the two other women that he has assaulted in Asheville, the State has reason to believe that he had only been in Asheville for about three months.... [H]e chose to perpetrate on three different individuals, all strangers to him, all in broad daylight. The boldness of his actions and the dangerousness of what he has done is truly concerning to the State, Your Honor, on behalf of the citizens of Buncombe County, and would ... respectfully request that Your Honor take all of those factors into consideration.
 

 Additionally, evidence was presented that defendant suffers from mental illness, and in its judgment the trial court recommended defendant receive "psychiatric and/or psychological counseling" while incarcerated, which may implicate "sexually violent predator" classification.
 
 See
 

 N.C. Gen. Stat. § 14-208.6
 
 (6) (2013) (defining a "[s]exually violent predator" in relevant part as "a person who has been convicted of a sexually violent offense
 
 *267
 
 and who suffers from a mental abnormality or personality disorder that makes the person likely to engage in sexually violent offenses directed at strangers....").
 

 However, the trial court did not render oral findings or explain its rationale for ordering lifetime registration and SBM, and those orders merely contain the bare statutorily required findings that defendant was neither a sexually violent predator, a recidivist, nor had been convicted of an aggravating offense. Accordingly, we cannot meaningfully assess whether any of the trial court's findings were merely clerical errors, or whether the trial court simply erred in ordering lifetime registration and SBM. We therefore reverse the registration and SBM orders, and remand only those issues for resentencing.
 

 If the State pursues SBM on remand, it must satisfy its burden of presenting evidence,
 
 inter alia
 
 , from which the trial court can fulfill its judicial duty to make findings concerning the reasonableness of SBM under the Fourth Amendment pursuant to
 
 Grady
 
 .
 
 See, e.g.
 
 ,
 
 Johnson
 
 , --- N.C. App. at ----,
 
 801 S.E.2d at 131
 
 (reversing SBM order and remanding for a new SBM hearing where the trial court failed to conduct a proper
 
 Grady
 
 hearing);
 
 see also
 

 State v. Blue
 
 ,
 
 246 N.C. App. 259
 
 ,
 
 783 S.E.2d 524
 
 , 527 (2016) (holding that "the State shall bear the burden of proving that the SBM program is reasonable").
 

 *324
 

 VIII. Ineffective Assistance of Counsel
 

 Defendant also contends that he suffered five separate instances of IAC at sentencing based on his trial counsel's alleged failures to: (1) object when he was sentenced to first-degree kidnapping and first-degree sexual assault because the indictment only charged the subsection (b) element of sexual assault; (2) object when he was sentenced twice for the same assault; (3) object when he was sentenced to lifetime SBM, although he was not eligible for lifetime SBM; (4) present expert testimony allegedly supporting a particular statutory mitigating factor; and (5) request that the trial court consider that particular statutory mitigating factor, rather than a non-statutory mitigating factor his trial counsel raised during sentencing.
 

 "IAC claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing."
 
 State v. Fair
 
 ,
 
 354 N.C. 131
 
 , 166,
 
 557 S.E.2d 500
 
 , 524 (2001) (citations omitted). However, when the cold record is inadequate for meaningful appellate review, and "the reviewing court [thus] determine[s] that IAC claims have been prematurely asserted on direct appeal, it shall dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent MAR proceeding."
 
 Id.
 
 at 167,
 
 557 S.E.2d at 525
 
 (citation omitted).
 

 After carefully considering the cold record and defendant's IAC claims, we conclude that each claim requires further investigation and were thus asserted prematurely. We therefore dismiss defendant's IAC claims without prejudice to his right to reassert those claims in a subsequent MAR proceeding.
 
 See
 

 Fair
 
 ,
 
 354 N.C. at 167
 
 ,
 
 557 S.E.2d at 525
 
 (citation omitted).
 

 IX. Conclusion
 

 As to defendant's first four alleged errors, we hold that defendant received a fair trial, free of error, and valid sentences based upon the jury's convictions. However, because the trial court's findings, without more, do not support its orders imposing lifetime registration or enrollment in SBM, and the record precludes meaningful appellate review, we reverse these orders and remand for resentencing solely on the issues of registration and SBM. If the State pursues SBM on remand, it must satisfy its burden of presenting evidence from which the trial court can make its required findings concerning the reasonableness of imposing SBM pursuant to
 
 Grady
 
 . We dismiss defendant's numerous IAC
 

 *325
 
 claims without prejudice to his right to reassert them in a subsequent MAR proceeding.
 

 *268
 
 NO ERROR IN PART; REVERSED AND REMANDED IN PART; DISMISSED IN PART.
 

 Judges DIETZ and INMAN concur.
 

 [1]
 

 A pseudonym is used to protect the victim's identity.
 

 [2]
 

 Pseudonyms.