IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-597

No. COA21-498

Filed 6 September 2022

Brunswick County, No. 07 CRS 54490

STATE OF NORTH CAROLINA

v.

RONALD DALE CHEERS, Defendant.

Appeal by Defendant from order entered 20 January 2021 by Judge Jason C. Disbrow in Brunswick County Superior Court. Heard in the Court of Appeals 7 June 2022.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Sonya Calloway-Durham, for the State.*

*Dylan J.C. Buffum Attorney at Law, PLLC, by Dylan J.C. Buffum, for Defendant-Appellant.*

INMAN, Judge.

Defendant-Appellant Ronald Dale Cheers ("Defendant") appeals from an order of the trial court vacating a previous order imposing lifetime satellite-based monitoring ("SBM") and ordering him to enroll for a period of 30 years. He argues: (1) the trial court lacked subject matter jurisdiction to conduct an evidentiary hearing and impose SBM upon him; (2) the trial court did not have statutory authority at the time of his hearing to impose a term of years based on his classification as a

"recidivist;" and (3) the trial court erred in concluding Defendant required the "highest level of supervision." After careful consideration of our SBM statutes, precedent, and the record, we affirm the order of the trial court.

## I.    FACTUAL & PROCEDURAL BACKGROUND

On 30 June 2008, Defendant pled guilty to two counts of indecent liberties with a child after sexually abusing the minor daughter of his then-girlfriend. Pursuant to the plea agreement, the trial court consolidated his convictions and sentenced him to 25 to 30 months in prison, with credit for 342 days of pre-trial confinement. The trial court also ordered Defendant to enroll in SBM for his natural life ("2008 SBM order"). The form order included the finding:

> The defendant was convicted of a reportable conviction as defined by [N.C. Gen. Stat. §] 14-208.6(4) and is required to register under Part 3 of Article 27A of Chapter 14 of the General Statutes because the defendant is classified as a sexually violent predator, is a recidivist, or was convicted of an aggravated offense as those terms are defined in [N.C. Gen. Stat. §] 14-208.6.

However, the order did not specify which statutory ground—sexually violent predator, recidivist, or aggravated offender—required Defendant's lifetime enrollment.

After two years in prison, in May 2010, Defendant was unconditionally discharged and his rights to citizenship were restored. Nearly ten years later, in light of our Supreme Court's holding in *State v. Grady*, 327 N.C. 509, 831 S.E.2d 542 (2019)

("*Grady III*"), that our SBM statutes were unconstitutional as applied to unsupervised recidivists, the State served Defendant with two notices of hearing to review Defendant's lifetime SBM enrollment. Then, the State advised Defendant's counsel via e-mail that Defendant's "previous compulsory lifetime SBM [was] unconstitutional" and Defendant was "entitled to a SBM hearing if and when he want[ed] to petition the court for removal based upon the ruling in *Grady*."

¶ 4        Upon the State's recommendation, on 24 August 2020, Defendant filed a motion for appropriate relief ("MAR"), seeking to terminate his mandatory lifetime enrollment in SBM. The State then moved to deny Defendant's motion, requesting instead that the trial court convert Defendant's motion to a "Petition to Terminate Defendant's Satellite-Based Monitoring" and conduct a hearing to determine whether Defendant should be enrolled in the SBM program for a term of years pursuant to N.C. Gen. Stat. § 208.40A (2019). In its motion, the State conceded that, at the time Defendant was convicted of two counts of indecent liberties in 2008, the trial court had enrolled Defendant in SBM based on his statutory classification as a recidivist.

¶ 5        Defendant's motion came on for hearing on 8 January and 13 January 2021. On 20 January 2021, the trial court vacated the 2008 lifetime SBM order, concluded Defendant "require[d] the highest level of supervision and monitoring," and ordered Defendant enroll in SBM for a term of 30 years, retroactive to his initial monitoring on 26 May 2010 ("2021 SBM order"). In its order, the trial court found the 2008

lifetime enrollment order "was unclear as to why the Defendant was ordered to enroll in lifetime [SBM]." Defendant appeals.

## II.    ANALYSIS

### A. Trial Court's Jurisdiction

¶ 6        Defendant argues the trial court lacked subject matter jurisdiction to conduct an evidentiary hearing in January 2021 and enter an order imposing SBM. We hold the trial court appropriately exercised its jurisdiction.

¶ 7        Whether a trial court has subject matter jurisdiction is a question of law, which we review *de novo. State v. Billings*, 278 N.C. App. 267, 2021-NCCOA-306, ¶ 14. Under *de novo* review, we consider the matter anew and freely substitute our own judgment for that of the lower tribunal. *Id.*

¶ 8        Defendant relies on *Billings*, a recent decision from this Court about the trial court's jurisdiction to conduct an SBM hearing, but he overlooks a key distinction between that case and the one before us and ignores more recent precedent from our Supreme Court on the issue. In *Billings*, we considered whether the trial court had jurisdiction to conduct an SBM hearing ten years after the offender was enrolled in SBM, two years after he was convicted and sentenced on his most recent offense, based solely on a scheduled hearing in the absence of any motion for SBM review. *Id.* ¶¶ 17, 21-23. We interpreted our SBM statutes to permit the trial court to conduct an SBM hearing either "during the sentencing phase" or "[w]hen an offender is convicted

of a reportable conviction . . . and *there has been no determination by a court on whether the offender shall be required to enroll in satellite-based monitoring*[.]" *Id.* ¶¶ 23, 24 (emphasis in original) (quoting N.C. Gen. Stat. §§ 14-208A(a), 14-208.40B(a) (2019)). Neither of those scenarios existed, *id.* ¶ 25, so we considered whether the trial court's jurisdiction had otherwise properly been invoked by "valid motion, complaint, petition, or other valid pleading[.]" *Id.* ¶ 28 (quotation marks and citation omitted). Because no motion was filed, we held the trial court was without jurisdiction to conduct an SBM hearing where the offender had already been enrolled and vacated the trial court's order without prejudice to the State's filing "an application for satellite-based monitoring." *Id.* ¶¶ 31-33.

¶ 9        In this case, Defendant filed an MAR with the trial court after the State advised him that he was entitled to relief under *Grady III*. Unlike in *Billings*, Defendant's own motion properly brought the matter before the trial court. In fact, at the hearing, the trial court opened: "We are back on the record . . . on the motion for appropriate relief." Defendant's counsel began his argument, "I filed this motion for appropriate relief on August 4, 2020, on behalf of [Defendant], pursuant to the recent case law in . . . *Grady*."

¶ 10       Further, though Defendant filed a criminal MAR, recent precedent from our Supreme Court has clarified that SBM orders are "civil in nature[.]" *State v. Hilton*, 378 N.C. 692, 2021-NCSC-115, ¶ 34 ("Since the SBM program is civil in nature, the

North Carolina Rules of Civil Procedure govern. As such, a defendant may also seek removal of SBM through Rule 60(b)." (citation omitted)); *see also State v. Strudwick*, 379 N.C. 94, 2021-NCSC-127, ¶¶ 17-18 ("The trial courts of this state are endowed with 'ample power to vacate judgments whenever such action is appropriate to accomplish justice' through the operation of Rule 60(b)(6) and are invited to wield that power in a judicious manner." (quoting *Brady v. Town of Chapel Hill*, 277 N.C. 720, 723, 178 S.E.2d 446, 448 (1971)).

¶ 11        Rule 60(b)(6) provides that "upon such terms as are just, the court may relieve a party . . . from a final . . . order . . . [for] [a]ny . . . reason justifying relief from the operation of the judgment." N.C. Gen. Stat. § 1A-1, Rule 60(b)(6) (2021)."The test for whether a[n] . . . order . . . should be modified or set aside under Rule 60(b)(6) is two-pronged: (1) extraordinary circumstances must exist, and (2) there must be a showing that justice demands that relief be granted." *Howell v. Howell*, 321 N.C. 87, 91, 361 S.E.2d 585, 588 (1987).

¶ 12        Following our Supreme Court's recent precedent in *Hilton* and *Strudwick*, we hold the trial court had continued jurisdiction over the original 2008 SBM order and could modify it pursuant to Defendant's motion. Defendant has not shown the trial court abused its discretion otherwise. *See Bank of Hampton Rds. v. Wilkins*, 266 N.C. App. 404, 406, 831 S.E.2d 635, 639 (2019) ("Rule 60 motions are addressed to the

sound discretion of the trial court and will not be disturbed absent a finding of abuse of discretion.").

¶ 13    Assuming *arguendo* the trial court lacked jurisdiction, Defendant cannot ask this Court to invalidate the very relief he requested. *See* N.C. Gen. Stat. § 15A-1443(c) (2021) ("[A] defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct."); *State v. Barber*, 147 N.C. App. 69, 74, 554 S.E.2d 413, 416 (2001) ("A defendant who invites error has waived his right to all appellate review concerning the invited error.").

**B. Recidivist Status**

¶ 14    Defendant contends the trial court lacked statutory authority to impose SBM because, as a recidivist convicted of an offense involving the physical, mental, or sexual abuse of a minor, he was not eligible for SBM under our statutes as they existed at the time of the hearing. We hold Defendant's reading of our statutes conflicts with precedent defining the Legislature's intent.

¶ 15    "[A]lleged statutory errors are questions of law and as such, are reviewed *de novo*." *State v. Harding*, 258 N.C. App. 306, 321, 813 S.E.2d 254, 265 (2018).

¶ 16    Defendant's prior convictions/record level worksheet is not included in the record on appeal, but the trial court's findings in the 2021 SBM order reveal Defendant was also convicted of four counts of indecent liberties with a child in 1994. Defendant has not challenged that finding, so it is binding on this Court. *See*

*Strudwick*, ¶ 24 ("[U]nchallenged findings of fact are binding on appeal." (quotation marks and citation omitted)).

¶ 17        In its order imposing SBM for 30 years, the trial court also found Defendant's offense "involv[ed] the physical, mental or sexual abuse of a minor pursuant to N.C. Gen. Stat. § 14-208.40A" and "Defendant is a recidivist[.]" Because the trial court found Defendant fit into both statutory categories, Defendant does not fall into the unsupervised, recidivist-only class exempted from lifetime monitoring under *Grady III*. *See Grady III*, 372 N.C. at 545, 831 S.E.2d at 569 ("The category to which this holding applies includes only those individuals who are not on probation, parole, or post-release supervision; who are *subject to lifetime SBM solely by virtue of being recidivists* as defined by the statute." (emphasis added)); *Strudwick*, ¶ 20 ("[T]he holding of *Grady III* concerning the unconstitutionality of North Carolina's lifetime SBM scheme as it applies to recidivists . . . is wholly inapplicable." (citation omitted)). Thus, not unlike the defendants in *Strudwick* and *Hilton* who, as aggravated offenders, fell outside *Grady III*'s holding, Defendant, even as a recidivist, *also* committed an offense involving the physical, mental, or sexual abuse of a minor and is beyond *Grady III*'s reach. *See Hilton*, ¶ 20 (explaining *Grady III* "left unanswered the question of whether the SBM program is constitutional as applied to sex offenders who are in categories other than that of recidivists who are no longer under State supervision.").

¶ 18        The version of our statutes in effect at the time of the 2021 SBM order from

which Defendant appeals provided:

> (d) If the court finds that the *offender committed an offense*
> *that involved the physical, mental, or sexual abuse of a*
> *minor*, that the offense is not an aggravated offense or a
> violation of G.S. 14-27.23 or G.S. 14-27.28 *and the offender*
> *is not a recidivist*, the court shall order that the Division of
> Adult Correction do a risk assessment of the offender. . . .
>
> (e) Upon receipt of a risk assessment from the Division of
> Adult Correction and Juvenile Justice pursuant to
> subsection (d) of this section, the court shall determine
> whether, based on the Division of Adult Correction and
> Juvenile Justice's risk assessment, the offender requires
> the highest possible level of supervision and monitoring. If
> the court determines that the offender does require the
> highest possible level of supervision and monitoring, the
> court shall order the offender to enroll in a satellite-based
> monitoring program for a period of time to be specified by
> the court.

§ 14-208.40A(d)-(e) (2019) (emphasis added). Since the trial court entered the 2021

SBM order, Subsections 14-208.40A(d) and (e) have been amended so that recidivists,

now referred to as "reoffenders," are subject to the same procedures outlined above.

*See* 2021 N.C. Sess. Laws 138, § 18(d); § 14-208.40A(c)-(c1) (2022).

¶ 19        Defendant's own summary of our caselaw acknowledges that the trial court's

finding that his offense involved the physical, mental, or sexual abuse of a minor

makes him eligible for enrollment in the SBM program. *See Harding*, 258 N.C. App.

at 322, 813 S.E.2d at 266. In addition, his reading of the previous iteration of the

statute would lead to absurd results, contrary to the intent of the General Assembly in identifying specific categories of sex offenders subject to monitoring, including those convicted of an offense involving the physical, mental, or sexual abuse of a minor. *See State v. Jones*, 367 N.C. 299, 306, 758 S.E.2d 345, 350 (2014) ("Where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded." (cleaned up)).

¶ 20     We must construe Subsections 14-208.40A(d) and (e) together and *in pari materia* with other provisions of the SBM statutes in effect at the time of the 2021 SBM order. *See State v. Rankin*, 371 N.C. 885, 889, 821 S.E.2d 787, 792 (2018) ("Parts of the same statute dealing with the same subject matter must be considered and interpreted as a whole." (citations omitted)); *State v. Jones*, 359 N.C. 832, 836, 616 S.E.2d 496, 498 (2005) ("In discerning the intent of the General Assembly, statutes *in pari materia* should be construed together and harmonized whenever possible."). Subsection 14-208.40(a)(2), in particular, provided the SBM program "shall be designed to monitor three categories of offenders[,]" including any offender that

> (i) is convicted of a reportable conviction as defined by [N.C. Gen. Stat. §] 14-208.6(4), (ii) is required to register under Part 2 of Article 27A of Chapter 14 of the General Statutes, (iii) *has committed an offense involving the physical, mental, or sexual abuse of a minor*, and (iv) based on the Division of Adult Correction and Juvenile Justice's risk assessment program requires the highest possible level of

supervision and monitoring.

§ 14-208.40(a)(2) (2019) (emphasis added).

In holding our SBM statutes were unconstitutional as applied to unsupervised, recidivist offenders in *Grady III*, our Supreme Court created a loophole for individuals in Defendant's position, as an unsupervised recidivist convicted of an offense involving the physical, mental, or sexual abuse of a minor. Recent legislative amendments resolved this discrepancy and bolstered the Legislature's original intent for the SBM regime—that sexually violent predators, recidivists, aggravated offenders, offenders convicted of an offense violating N.C. Gen. Stat. §§ 14-27.2A or 14-27.4A, and offenders convicted of an offense involving the physical, mental, or sexual abuse of a minor, be subject to SBM. *See* 2021 N.C. Sess. Laws 138, § 18(d); § 14-208.40A(c)-(c1) (2022). And, as noted above, in *Hilton* and *Strudwick*, our Supreme Court held that the imposition of lifetime SBM to offenders like Defendant, who meet statutory criteria other than as a recidivist, does not violate the Fourth Amendment. *Hilton*, ¶ 36 (holding "the SBM statute as applied to aggravated offenders is not unconstitutional" because the "search effected by the imposition of lifetime SBM on the category of aggravated offenders is reasonable under the Fourth Amendment"); *Strudwick*, ¶ 28 (holding lifetime SBM was constitutional for another aggravated offender).

Based on our canons of statutory construction and binding precedent, we hold

the trial court did not err in imposing SBM upon Defendant for a period of 30 years.

¶ 23   Further, we note the Legislature amended our SBM regime just several months after the trial court entered its order from which Defendant now appeals. *See* 2021 N.C. Sess. Laws 138, § 18(d). Those legislative amendments provide in part that Defendant may petition the trial court to modify or terminate his SBM enrollment, and the trial court must cap the term at ten years. *See* N.C. Gen. Stat. § 14-208.46(a) (2022) ("An offender who was ordered prior to December 1, 2021, to enroll in satellite-based monitoring for a period longer than 10 years may file a petition for termination or modification of the monitoring requirement with the superior court in the county where the conviction occurred."); *State v. Anthony*, 2022-NCCOA-414, ¶ 19 ("[I]f the offender has been enrolled for at least 10 years already, 'the court shall order the petitioner's requirement to enroll in the satellite-based monitoring program be terminated.' Combined with a change setting a ten-year maximum on new SBM enrollments, the statutory system now limits SBM to ten years for all offenders." (quoting N.C. Gen. Stat. § 14-208.46(d)-(e)) (citations omitted). In other words, since Defendant has been enrolled in SBM for more than ten years, he can obtain a court order terminating that enrollment today.

**C. Sufficient Findings to Support "Highest Level of Supervision"**

¶ 24   Lastly, Defendant asserts the trial court erred in determining he required the "highest level of supervision" based on a mistaken understanding of his risk

assessment and because it failed to enter sufficient "additional findings" derived from competent evidence to justify the monitoring for a period of 30 years.

¶ 25    We review the trial court's findings of fact in an SBM order to determine whether they are supported by competent evidence, and we review the trial court's conclusions of law "for legal accuracy and to ensure that those conclusions reflect a correct application of law to the facts found." *Harding*, 258 N.C. App. at 321, 813 S.E.2d at 265 (citations omitted). For Defendant's challenge, in particular, we review the trial court's order "to ensure that the determination that 'defendant requires the highest possible level of supervision and monitoring' 'reflect[s] a correct application of law to the facts found.'" *State v. Kilby*, 198 N.C. App. 363, 367, 679 S.E.2d 430, 432 (2009) (citation omitted).

¶ 26    Defendant concedes "as a matter of historical fact" that he scored a "4" on the Static-99R evaluation conducted on 6 January 2021. But Defendant argues Findings of Fact 7 and 8: (1) are unsupported by competent evidence; (2) demonstrate the trial court misunderstood the application of Defendant's Static-99R score because the assessment measures the estimated likelihood of recidivism at the time an offender is released up to two years post-release where Defendant had not re-offended for ten years in the community; and (3) indicate the trial court misconstrued Defendant's recidivism risk percentage. The trial court's findings provide:

> 7. Defendant scored a "4" on the Static-99R evaluation

conducted January 6, 2021, indicating Defendant is at an "above average risk" of recidivism;

8. Pursuant to the Static 99R result, Defendant's sexual recidivism rate is in the moderate high-risk category of 6.1-12.2%[.]

The Static-99R Coding Rules provide:

The longer an offender has been free of detected sexual offending since his release to the community from their index sex offence, the lower their risk of recidivism. Our research has found that, in general, for every five years the offender is in the community without a new sex offence, their risk for recidivism roughly halves. Consequently, we recommend that for offenders with two years or more sex offence free in the community since release from the index offence, the time they have been sex offence free in the community should be considered in the overall evaluation of risk. Static risk assessments estimate the likelihood of recidivism at the time of release and we expect they would be valid for approximately two years.

Soc'y for the Advancement of Actuarial Risk Need Assessment, *Static-99R Coding Rules* 13 (Rev. 2016).[1]

Based on the Static-99R guidance, Defendant argues the trial court should have considered that he had not committed a sex offense for a decade since his release in its risk assessment and that his risk should have been 3.0 to 6.1 percent, in the "low" to "moderate-low" risk range.

Even if, as Defendant argues, the trial court misunderstood or misapplied

---

[1] Available at: https://saarna.org/download/static-99r-coding-rules-revised-2016/.

Defendant's Static-99R rating, the trial court made sufficient additional findings based in competent evidence to support the "highest level of supervision:" (1) Defendant scored a "4" on his recent Static-99R; (2) Defendant authored a letter prior to his 2008 conviction saying he would "do it again when [he] g[o]t out;" (3) Defendant's prior record level was IV; (4) Defendant had been convicted of six counts of taking indecent liberties and had disclosed to his therapist that he had impregnated a fourteen-year-old when he was in college, forcing the child to have an abortion; (5) Defendant had not completed sex offender treatment either while in prison or since his release; (6) he abused a position of trust and authority in perpetrating the sex offenses; (7) Defendant had several non-compliance issues with his monitoring device since his release; and (8) based on a psycho-evaluation of Defendant, Defendant had minimized his criminal conduct which "could be a sign of dishonesty." The trial court made sufficient findings to support its determination that Defendant required the "highest possible level of supervision and monitoring" for a term of 30 years. *See Kilby*, 198 N.C. App. at 366, 679 S.E.2d at 432. *Cf. State v. Dye*, 254 N.C. App. 161, 170-71, 802 S.E.2d 737, 743 (2017) ("[T]he trial court found that Defendant required the highest possible level of supervision and monitoring 'based on the risk assessment of the Division of Adult Correction,' and did not make any further findings of fact as to why SBM was appropriate. This finding was in error, and requires us to vacate the SBM order.").

## III. CONCLUSION

Based on the foregoing, we affirm the order of the trial court vacating Defendant's lifetime SBM enrollment and ordering Defendant to enroll in SBM for a term of 30 years.

AFFIRMED.

Judges HAMPSON and GRIFFIN concur.