STATE v. WILKES

[225 N.C. App. 233 (2013)]

STATE OF NORTH CAROLINA
v.
TIMOTHY C. WILKES

No. COA12-387

Filed 15 January 2013

**1. Assault—deadly weapon with intent to kill inflicting serious injury—intent to kill—sufficiency of evidence**

The trial court did not err by denying defendant's motions to dismiss the charge of assault with a deadly weapon with intent to kill inflicting serious injury because there was insufficient evidence to show intent to kill. Defendant's conviction was based on his use of a bat to assault his wife; both the nature and manner of the assault presented sufficient evidence for a jury to conclude that defendant had intent to kill.

**2. Assault—appellate review—substantial evidence at trial—jury findings—irrelevant**

In an appeal from an assault prosecution arising from defendant's prolonged assault on his wife, including an assault with a bat, a jury finding that defendant was not guilty of attempted murder and the lack of a finding of intent to kill with respect to an assault with his fists were irrelevant. The inquiry focused only on whether there was substantial evidence of intent to kill presented at trial.

**3. Assault—two charges—not a single transaction**

Although defendant argued that the trial court erred by denying his motions to dismiss one of two felony assault charges since they constituted a single transaction, the State presented substantial evidence that there was a distinct interruption in the assaults in that the assaults involved a separate thought process, a time distinction, and injuries on different parts of the victim's body. The fact that both assaults were aimed at the head did not merge the offenses.

**4. Sentencing—mitigating factor—evidence of employment history**

The sentencing judge erred by failing to find as a mitigating factor that defendant had a positive employment history where uncontradicted and manifestly credible evidence of defendant's positive employment history was introduced.

Judge HUNTER, Robert C., concurring in part and dissenting in part.

Appeal by defendant from judgment entered 16 June 2011 by Judge V. Bradford Long in Moore County Superior Court. Heard in the Court of Appeals 24 October 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Creecy C. Johnson, for the State.*

*Duncan B. McCormick for defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Timothy C. Wilkes ("Defendant") appeals from judgment entered against him after a jury found him guilty of assault with a deadly weapon with intent to kill inflicting serious injury, misdemeanor child abuse, and assault with a deadly weapon inflicting serious injury. On appeal, Defendant argues that the trial court erred by: (1) denying Defendant's motions to dismiss the charge of assault with a deadly weapon with intent to kill inflicting serious injury; (2) denying Defendant's motions to dismiss one of the two felony assault charges; and (3) imposing a sentence in the aggravated range for Defendant's assault with a deadly weapon inflicting serious injury conviction. After careful review, we find no error at trial and remand for resentencing.

## I. Factual & Procedural Background

The State's evidence at trial tended to establish the following: In September of 1993 or 1994, Defendant married Ms. Julie Bush ("Ms. Bush"). The couple had two sons together, C.W. and E.W., and Ms. Bush also had a son, Andrew, from a previous relationship. At trial, Andrew, C.W., and E.W. were ages twenty-three, fourteen, and twelve, respectively. Ms. Bush and Defendant were married for fifteen years. During that time, the couple separated twice; the first separation occurred after Defendant pushed Ms. Bush against a wall and the second followed an incident where Defendant punched Andrew in the face several times. The second separation lasted from October 2008 through October 2009. In October 2009, Ms. Bush retained an attorney and told Defendant that she wanted a divorce.

The incident in question occurred on the evening of 24 October 2009 after Ms. Bush had returned from a birthday party. Defendant later testified that he was upset that Ms. Bush had attended the party because he "could lose her to a guy over there." Soon after Ms. Bush

returned home, E.W. came running upstairs to inform her that Defendant was at the back door. Ms. Bush unlocked the back door to "see what [Defendant] wanted because . . . [she] didn't expect him to be there." Defendant pushed past her into the house and refused to leave. Ms. Bush told C.W. to call 9-1-1, but Defendant pulled the telephone out of the wall. He then dropkicked the television and threw the computer monitor. Defendant then grabbed Ms. Bush and started punching her in the face. He blackened both of her eyes, broke her nose, and loosened all of her teeth. Ms. Bush fell to her knees in front of him.

Then, C.W., who was twelve years old at the time, came into the room with a baseball bat telling Defendant, "[d]on't hit my Mama again." Defendant continued to move towards Ms. Bush, so C.W. hit Defendant in the stomach with the bat. Defendant turned to go after C.W., but Ms. Bush grabbed Defendant around the waist and held on to him for "a while." Grabbing the bat from C.W., Defendant then began beating Ms. Bush with it—first on her arms, while she was holding them up, and then on her head "over and over again" after she dropped her arms. Ms. Bush fell to the fetal position, and she looked up only to be struck again with the bat. Ms. Bush lost consciousness. Defendant had crushed two of Ms. Bush's fingers. broken bones in her forearms and her hands, and cracked her skull.

Soon after Ms. Bush regained consciousness, EMS and the Moore County Sheriff's Office arrived at the scene. Detective Sergeant Cathy Williams ("Detective Williams") described C.W. and E.W. as "basically hysterical" over what had happened to their mother. Both boys told Deputy Robert Langford ("Deputy Langford"): "My dad beat my mom." Along with two firefighters, Deputy Langford discovered Defendant in the backyard and took him into custody. Defendant testified that he could not remember anything after kicking the television and pulling the phone out of the wall. The next thing he recalled was waiting for the police by his truck, stabbing himself on the wrist, and asking the officer to shoot him.

Meanwhile, Ms. Bush was rushed to the hospital for care, which included multiple surgeries inserting metal plates into her left arm and right hand. From conversations with EMS, Detective Williams "was uncertain . . . if [Ms. Bush] was going to make it through the night."

It took several months for the open wound on Ms. Bush's head to heal and for Ms. Bush to fully recover her hearing, vision, and writing ability. At the time of the trial, Ms. Bush continued to suffer from non-

positional proximal vertigo, and to this day, she has no sense of smell due to severed nerves.

Prior to and at trial in June 2011, Defendant moved to dismiss one of the two indictments for assault contending that they constituted one continuous transaction. The trial court denied the motions. Both at the close of the State's evidence and before the case was sent to the jury, Defendant moved to dismiss the charge of assault with a deadly weapon with intent to kill inflicting serious injury for insufficient evidence, but the trial court denied both motions.

On 16 June 2011, the jury found Defendant not guilty of felony breaking and entering and attempted murder. However, it found Defendant guilty of assault with a deadly weapon with intent to kill inflicting serious injury, a Class C felony, see N.C. Gen. Stat. § 14-32(a) (2011); misdemeanor child abuse; and assault with a deadly weapon inflicting serious injury, a Class E felony, see N.C. Gen. Stat. § 14-32(b). Consolidating the convictions of misdemeanor child abuse and assault with a deadly weapon with intent to kill inflicting serious injury (09 CRS 54366), the trial court sentenced Defendant in the presumptive range to a term of 73 to 97 months. Regarding Defendant's conviction of assault with a deadly weapon inflicting serious injury (10 CRS 1555), Defendant admitted to three aggravating factors, and the trial court sentenced him in the aggravated range to a term of 31 to 47 months. Although defendant asked the trial court to consider mitigating factors, the trial court declined to find mitigating factors. Defendant's sentences were to run consecutively.

On 27 June 2011, Defendant filed written notice of appeal.

## II. Jurisdiction

This Court has jurisdiction to hear the instant case pursuant to N.C. Gen. Stat. § 7A-27(b) (2011).

## III. Analysis

[1] Defendant first argues that the trial court erred by denying his motions to dismiss the charge of assault with a deadly weapon with intent to kill inflicting serious injury because there was insufficient evidence to show intent to kill. We disagree.

On a motion to dismiss, a trial court must consider: (1) "whether there is substantial evidence of each element of the offense charged;" and (2) whether there is substantial evidence "that the defendant is the perpetrator." *State v. Bonney*, 329 N.C. 61, 76-77, 405 S.E.2d 145,

154 (1991). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Franklin*, 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990). The evidence must be viewed in the light most favorable to the State, meaning that any inconsistencies are resolved in the State's favor and the State is entitled to "the benefit of every reasonable inference to be drawn in its favor from the evidence." *State v. Blake*, 319 N.C. 599, 604, 356 S.E.2d 352, 355 (1987).

Defendant's conviction for assault with a deadly weapon with intent to kill inflicting serious injury was based on his use of the bat to assault Ms. Bush.[1] "The elements of assault with a deadly weapon with intent to kill inflicting serious injury are: (1) an assault, (2) with the use of a deadly weapon, (3) with an intent to kill, and (4) inflicting serious injury, not resulting in death." *State v. Tirado,* 358 N.C. 551, 579, 599 S.E.2d 515, 534 (2004).

"An intent to kill is a matter for the State to prove . . . and is ordinarily shown by proof of facts from which an intent to kill may be reasonably inferred." *State v. Thacker*, 281 N.C. 447, 455, 189 S.E.2d 145, 150 (1972). Such intent may be inferred from "the nature of the assault, the manner in which it was made, the conduct of the parties, and other relevant circumstances." *State v. Barlowe*, 337 N.C. 371, 379, 446 S.E.2d 352, 357 (1994) (citations and quotation marks omitted). Although an assault with a deadly weapon that results in serious injury does not establish a presumption of an intent to kill as a matter of law, *Thacker*, 281 N.C. at 455, 189 S.E.2d at 150, "an assailant must be held to intend the natural consequences of his deliberate act." *State v. Grigsby*, 351 N.C. 454, 457, 526 S.E.2d 460, 462 (2000) (quotation marks and citation omitted).

In the present case, the nature and manner of the attack on Ms. Bush would support a reasonable inference that Defendant intended to kill Ms. Bush. Defendant hit Ms. Bush even after she fell to her knees. Defendant struck Ms. Bush repeatedly over the head with the baseball bat until she lost consciousness. Taking the evidence in the light most favorable to the State, there is no indication that Ms. Bush ever fought back. In contrast, the evidence establishes that Defendant viciously attacked Ms. Bush after she was on the ground and in the fetal position. Ms. Bush's wounds to her head, caused by

---

1. We note that while the jury had the option to convict Defendant of assault with a deadly weapon with intent to kill inflicting serious injury based on his assault of Ms. Bush with his fists, the jury convicted him of the lesser-included offense of assault with a deadly weapon inflicting serious injury (10 CRS 1555).

the baseball bat, could have been fatal. Thus, both the nature and manner of Defendant's assault with the bat upon Ms. Bush presented sufficient evidence for a jury to conclude that Defendant had intent to kill.

Furthermore, the circumstances surrounding the attack, including the conduct of the parties, provide additional evidence of intent to kill. Defendant and Ms. Bush had a volatile relationship that included two separation periods stemming from Defendant's aggressive behavior. Ms. Bush had also recently filed for divorce, and Defendant acknowledged that on the evening of the assault he was upset that she was attending a party because he "could lose her to a guy." Thus, Defendant's proffered motivation for his actions support an inference that he intended to kill her to prevent her from becoming involved with another man.

[2] Based on the nature, manner, and circumstances of the assault, we conclude that the trial court did not err in denying Defendant's motions to dismiss the assault with a deadly weapon with intent to kill inflicting serious injury charge. While Defendant correctly notes that the jury found Defendant not guilty of attempted murder and did not find intent to kill with respect to the assault committed with Defendant's fists, this is irrelevant to the present inquiry because our review only focuses on whether there was substantial evidence of intent to kill presented at trial. Here, we find there was substantial evidence, and therefore, Defendant's argument is overruled.

[3] Next, Defendant argues that the trial court erred by denying his motions to dismiss one of the two felony assault charges as he contends they constituted a single transaction. We disagree.

Prior to trial, Defendant moved to dismiss one of the two felony assault charges on the grounds that permitting both charges would be a violation of double jeopardy since the assault constituted a single transaction. However, the trial court denied this motion.

"Double jeopardy is prohibited both by the Fifth Amendment to the United States Constitution and [North Carolina's] common law." *State v. McCoy*, 174 N.C. App. 105, 115, 620 S.E.2d 863, 871 (2005). "The double jeopardy clause prohibits . . . multiple convictions for the same offense." *State v. Ezell*, 159 N.C. App. 103, 106, 582 S.E.2d 679, 682 (2003). Thus, "[i]n order for a criminal defendant to be charged and convicted of two separate counts of assault stemming from one transaction, the evidence must establish a distinct interruption in the original assault followed by a second assault[,] so that the subsequent

assault may be deemed separate and distinct from the first." *State v. Littlejohn*, 158 N.C. App. 628, 635, 582 S.E.2d 301, 307 (2003) (quotation marks and citation omitted) (second alteration in original). In *Littlejohn*, this Court found no error where the defendant was convicted of two assaults that were distinct in time, resulted in injuries to separate parts of the victim's body, and where the second assault occurred only after the first assault had "ceased." *Id.* at 636-37, 582 S.E.2d at 307.

Similarly, in *State v. Rambert*, 341 N.C. 173, 175, 459 S.E.2d 510, 512 (1995), the defendant was charged with and convicted of three counts of discharging a firearm into occupied property. At trial, the State's evidence tended to establish that the victim was sitting in his car, parked in a grocery store parking lot. *Id.* at 176, 459 S.E.2d at 512. The defendant pulled up in another car beside the victim. *Id.* After they exchanged some words, the defendant produced a gun. *Id.* The victim ducked down in his car, and the defendant fired his gun at the victim's car. *Id.* The bullet entered through the front windshield. *Id.* The victim drove forward, and another bullet hit the passenger side door. *Id.* When the parties were approximately ten yards apart, the defendant pursued the victim and fired a final shot. *Id.* The bullet lodged in the car's bumper. *Id.* at 176, 459 S.E.2d at 512-13. The defendant challenged the convictions, arguing that they violated double jeopardy. *Id.* at 175, 459 S.E.2d at 511. However, our Supreme Court disagreed, noting the following factors in support of its decision: (1) "[e]ach shot, fired from a pistol, as opposed to a machine gun or other automatic weapon, required that [the] defendant employ his thought processes each time he fired the weapon;" (2) "[e]ach act was distinct in time;" and (3) "each bullet hit the vehicle in a different place." *Id.* at 176-77, 459 S.E.2d at 513.

In applying the *Rambert* factors to the present case, the State presented substantial evidence that there was a distinct interruption in the assaults.

First, the assaults were the result of separate thought processes. In *Rambert*, our Supreme Court found separate thought processes for three gunshots because the shots were from a pistol, not an automatic weapon, and thus the "defendant employ[ed] his thought processes each time he fired the weapon." *Id.* at 177, 459 S.E.2d at 513. If the brief amount of thought required to pull a trigger again constitutes a separate thought process, then surely the amount of thought put into grabbing a bat from a twelve-year-old boy and then

turning to use that bat in beating a woman constitutes a separate thought process.

Second, the acts were distinct in time. The second assault occurred after Defendant had turned his attention away from Ms. Bush to C.W. Ms. Bush had fallen to her knees after the initial attack. When Defendant moved towards C.W., Ms. Bush grabbed Defendant around the waist, holding him for "a while." The jury was specifically instructed that "to find the defendant guilty of two separate assaults[,] you must find first that there was a distinct interruption in the original assault followed by a second assault." There was sufficient evidence from the above facts for a jury to determine that the two assaults were distinct in time.

Finally, Ms. Bush sustained injuries on different parts of her body. The dissent concludes that the blows were all aimed at the victim's head and were thus not in different places. However, the reason Ms. Bush sustained injuries on different parts of her body was because there was a break in the action during which time Defendant grabbed a bat and Ms. Bush put her arms up in order to protect her face. Because the two assaults were distinct in time and involved separate thought processes, the fact that both assaults were aimed at the head does not merge the offenses. Because there were multiple transactions, we find no error.

[4] Defendant lastly argues that the trial court erred in sentencing Defendant in the aggravated range for assault with a deadly weapon inflicting serious injury without considering mitigating factors. We agree.

Defendant requested several mitigating factors, including positive employment history, good character/reputation in the community, provocation, and mental condition. "[W]e will find the sentencing judge in error only when evidence of a statutory mitigating factor is both uncontradicted and manifestly credible." *State v. Butler*, 341 N.C. 686, 693-94, 462 S.E.2d 485, 489 (1995).

The evidence on provocation and on Defendant's mental condition was unclear and thus the trial court was not required to find either of those factors. Similarly, the State put on evidence that contradicted Defendant's evidence on good character/reputation in the community, so there was no requirement that the trial court find that factor.

**STATE v. WILKES**

[225 N.C. App. 233 (2013)]

There was, however, uncontradicted and manifestly credible evidence introduced of Defendant's positive employment history. Defendant introduced his military records, which included commendations and awards. This evidence was uncontradicted, and the credibility of the records was likewise not questioned. We therefore must find that the sentencing judge was in error in failing to find as a mitigating factor that Defendant had a positive employment history, and we therefore remand for resentencing.

## IV. Conclusion

Because we find there was substantial evidence that Defendant intended to kill Ms. Bush, we hold that the trial court did not err in denying his motion to dismiss for insufficient evidence the assault with a deadly weapon with intent to kill inflicting serious injury charge. We also hold that the trial court did not err in failing to dismiss one of the assault charges, as there were multiple transactions. Finally, we remand for resentencing as the trial court erred by failing to find as a mitigating factor that Defendant had a positive employment history.

NO ERROR AT TRIAL; REMANDED FOR RESENTENCING.

Judge CALABRIA concurs.

Judge HUNTER, Robert C., concurs in part and dissents in part in a separate opinion.

HUNTER, Robert C., Judge, concurring in part and dissenting in part.

While I agree with the majority that the trial court did not err in denying defendant's motions to dismiss the charge of assault with a deadly weapon with intent to kill inflicting serious injury because there was sufficient evidence to establish intent to kill, I conclude that defendant's actions constituted a single assault. Therefore, I must respectfully dissent in regard to defendant's double jeopardy claim, and I would vacate defendant's conviction for assault with a deadly weapon inflicting serious injury, the lesser felony, case number 10 CRS 1555. Accordingly, I would not address the merits of defendant's argument that the trial court erred in sentencing defendant in the aggravated range for this conviction.

Background

.A brief recitation of the evidence presented at trial is as follows: In September of 1993 or 1994, defendant married Ms. Julie Bush ("Ms. Bush"). During their marriage, they separated twice. The incident in question occurred on the evening of 24 October 2009 after Ms. Bush had returned home from a party. Soon after Ms. Bush returned home, their youngest son, E.W., ran upstairs and told her that defendant was at the back door. After she unlocked the back door, defendant pushed past her into the house and refused to leave. Ms. Bush told their oldest son, C.W., to call 9-1-1, but defendant pulled the telephone out of the wall. He kicked the television and threw the computer monitor. Defendant began punching Ms. Bush in the face, and she fell to her knees in front of him.

Then, C.W. came into the room with a baseball bat telling defendant, "[d]on't hit my Mama again." C.W. hit defendant in the stomach with the bat after defendant kept moving toward Ms. Bush. Defendant turned to go after C.W., but Ms. Bush grabbed defendant around the waist. Grabbing the bat from C.W., defendant then began beating Ms. Bush with it—first on her arms, while she was holding them up, and then on her head "over and over again" after she dropped her arms. Ms. Bush fell to the floor in the fetal position and, eventually, lost consciousness.

Soon after Ms. Bush regained consciousness, EMS and the police from the Moore County Sheriff's Office arrived at the scene. Ms. Bush was rushed to the hospital.

On 16 June 2011, the jury found defendant guilty of assault with a deadly weapon with intent to kill inflicting serious injury, a Class C felony, see N.C. Gen. Stat. § 14-32(a) (2011); misdemeanor child abuse; and assault with a deadly weapon inflicting serious injury, a Class E felony, see N.C. Gen. Stat. § 14-32(b). Consolidating the convictions of misdemeanor child abuse and assault with a deadly weapon with intent to kill inflicting serious injury (09 CRS 54366), the trial court sentenced defendant in the presumptive range to a term of 73 to 97 months imprisonment. Regarding defendant's conviction of assault with a deadly weapon inflicting serious injury (10 CRS 1555), defendant admitted to three aggravating factors, and the trial court sentenced him in the aggravated range to a term of 31 to 47 months imprisonment. Defendant's sentences were to run consecutively.

Arguments

Defendant first argues that the trial court erred by denying his motions to dismiss the charge of assault with a deadly weapon with intent to kill inflicting serious injury because there was insufficient evidence to show intent to kill. I concur with the majority that based on the nature, manner, and circumstances of the assault, the trial court did not err in denying defendant's motion to dismiss this charge.

Next, defendant argues that the trial court erred by denying his motions to dismiss one of the two felony assault charges as he contends they constituted a single transaction. I agree.

Prior to trial, defendant moved to dismiss one of the two felony assault charges on the grounds that permitting both charges would be a violation of double jeopardy since the assault constituted a single transaction. However, the trial court denied this motion.

"Double jeopardy is prohibited by both the Fifth Amendment to the United States Constitution and [North Carolina's] common law." *State v. McCoy*, 174 N.C. App. 105, 115, 620 S.E.2d 863, 871 (2005), *disc. review denied*, 628 S.E.2d 8 (2006). "The double jeopardy clause prohibits . . . multiple convictions for the same offense." *State v. Ezell*, 159 N.C. App. 103, 106, 582 S.E.2d 679, 682 (2003). Thus, "[i]n order for a criminal defendant to be charged and convicted of two separate counts of assault stemming from one transaction, the evidence must establish a distinct interruption in the original assault followed by a second assault[,] so that the subsequent assault may be deemed separate and distinct from the first." *State v. Littlejohn*, 158 N.C. App. 628, 635, 582 S.E.2d 301, 307 (2003) (internal quotation marks omitted). In *Littlejohn*, this Court found no error where the defendant was convicted of two assaults that were distinct in time, the injuries occurred in separate parts of the victim's body, and where the second assault occurred only after the first assault had "ceased." *Id.* at 636-37, 582 S.E.2d at 307.

Similarly, in *State v. Rambert*, 341 N.C. 173, 175, 459 S.E.2d 510, 512 (1995), the defendant was charged with and convicted of three counts of discharging a firearm into occupied property. At trial, the State's evidence tended to establish that the victim was sitting in his car, parked in a grocery store parking lot. *Id.* at 176, 459 S.E.2d at 512. The defendant pulled up in another car beside the victim. *Id.* After they exchanged some words, the defendant produced a gun. *Id.* The victim ducked down in his car, and the defendant fired his gun at the

victim's car. *Id.* The bullet entered through the front windshield. *Id.* The victim drove forward, and another bullet hit the passenger side door. *Id.* When the parties were approximately ten yards apart, the defendant pursued the victim and fired a final shot. *Id.* The bullet lodged in the car's bumper. *Id.* at 176, 459 S.E.2d at 513. The defendant challenged the convictions, arguing that they violated double jeopardy. *Id.* However, our Supreme Court disagreed, noting the following factors in support of its decision: (1) "[e]ach shot, fired from a pistol, as opposed to a machine gun or other automatic weapon, required that [the] defendant employ his thought processes each time he fired the weapon"; (2) "[e]ach act was distinct in time"; and (3) "each bullet hit the vehicle in a different place." *Id.* at 176-77, 459 S.E.2d at 513.

In *State v. Spellman,* 167 N.C. App. 374, 383, 605 S.E.2d 696, 703 (2004), this Court applied the rationale of *Rambert* to determine whether the defendant's convictions for assault with a deadly weapon on a government official and assault with a deadly weapon violated his constitutional protection from double jeopardy. In concluding that there was no violation of double jeopardy, this Court held that "as in *Rambert,* the evidence in the instant case tends to show that defendant employed his thought process prior to committing the second assault, which occurred at a distinct and separate time after the first assault was completed." *Id.* at 383, 605 S.E.2d at 702.

In applying the *Rambert* factors to the present case, I conclude that the State did not present substantial evidence that there was a distinct interruption in the assaults. First, there was no evidence that defendant's actions were the result of separate thought processes. Although defendant did change weapons during the assault, that change was not due to a separate thought process. Defendant only came into possession of the bat when C.W. hit him with it. I find the facts of this case distinguishable from a situation where a defendant ceases an initial assault, obtains a different weapon, and then renews his assault on a victim. For example, in *Spellman,* 167 N.C. App. at 378, 605 S.E.2d at 700, the defendant and a police officer got into an altercation. As the defendant was trying to drive away, the officer held onto the door of the defendant's truck. *Id.* After the officer was able to pull the defendant from the car, the truck ran over the officer's leg. *Id.* The defendant then got up, ran eighty feet, got back into the truck, and drove the truck toward the officer who was still lying on the ground. *Id.* at 383, 605 S.E.2d at 702. In holding that the facts supported defendant's convictions for two separate assaults, this Court

concluded that "the evidence in the instant case tends to show that [the] defendant employed his thought process prior to committing the second assault." *Id.*

In contrast to *Spellman*, there was no evidence that defendant began his attack on Ms. Bush with the baseball bat based on a separate thought process. Instead, the evidence establishes that his actions were a continuation of his prior plan—his acquisition of the baseball bat was the result of happenstance, not purposeful intent. Moreover, the use of multiple weapons does not necessarily require a conclusion that the use of each weapon constitutes a separate assault. *See McCoy*, 174 N.C. App. at 116, 620 S.E.2d at 872 (holding that even though the defendant stabbed, beat, and threw the victim against the wall on one day and struck the victim with his hands and broke the victim's arm by twisting it the next day, the evidence only supported a conviction of one assault per day).

In applying the second *Rambert* factor, I believe that the evidence does not establish that defendant's acts were distinct in time. Although defendant turned away briefly to grab the bat from C.W., this momentary distraction is not enough to establish a distinct interruption necessary to sustain two assault charges. While the nature of the assault did escalate, there was no apparent break in the action to support a distinct cessation of defendant's initial attack so as to consider his use of the bat a separate assault.

Finally, in applying the third *Rambert* factor, while Ms. Bush sustained injuries on different parts of her body when defendant was hitting her with the bat, her testimony establishes that the reason her arms were injured with the bat was because she was holding them up, presumably in an effort to protect her face. However, after she dropped them, defendant continued hitting her in the face with the bat. Thus, defendant was aiming for her head the entire time.

Based on an application of the *Rambert* factors, while the evidence establishes that defendant's actions constituted a single continuous transaction that resulted in multiple injuries to Ms. Bush, I conclude that it does not establish two separate and distinct assaults. Accordingly, I would vacate defendant's conviction for assault with a deadly weapon inflicting serious injury, the lesser felony, case number 10 CRS 1555. I note that while defendant's use of his fists during the initial part of the attack did not establish an intent to kill, his continuation of the assault with the bat did. However, even if an assault escalates such that a defendant's later actions may support an infer-

ence of an intent to kill, a defendant should not be automatically precluded from asserting a double jeopardy claim simply because the escalation would allow the State to charge a defendant with a higher offense.

Finally, defendant argues that the trial court erred in imposing a sentence in the aggravated range for assault with a deadly weapon inflicting serious injury without considering mitigating factors. However, since I would vacate defendant's conviction of assault with a deadly weapon inflicting serious injury, I would not reach the merits of defendant's argument.

Conclusion

Because I concluded that the evidence supported only one assault charge, I would vacate defendant's conviction for assault with a deadly weapon inflicting serious injury, case number 10 CRS 1555.