IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-474

Filed: 15 December 2020

Buncombe County, Nos. 18 CRS 85370-71, 85783-84

STATE OF NORTH CAROLINA

v.

LEWIE P. ROBINSON

Appeal by defendant by writ of certiorari from judgments entered 5 December 2018 by Judge Marvin P. Pope, Jr., in Buncombe County Superior Court. Heard in the Court of Appeals 22 January 2020.

*Attorney General Joshua H. Stein, by Assistant Attorney General Jessica Macari, for the State.*

*Dylan J.C. Buffum for defendant-appellant.*

ZACHARY, Judge.

Defendant Lewie P. Robinson appeals from judgments entered upon his guilty plea to one count each of (1) assault on a female, (2) violation of a domestic violence protective order, (3) assault inflicting serious bodily injury, and (4) assault by strangulation. Defendant has filed a petition for writ of certiorari seeking review of his guilty plea. In our discretion, we allow his petition for the limited purpose of reviewing his challenge to the factual basis for his plea arrangement. After careful review, we conclude that there was an insufficient factual basis for Defendant's guilty plea. Moreover, the trial court was not authorized to enter judgment and sentence Defendant for two lesser assault offenses based on the same conduct as that

underlying his conviction for assault inflicting serious bodily injury. *See State v. Fields*, 374 N.C. 629, 633, 843 S.E.2d 186, 189 (2020). Accordingly, we remand the judgments entered in 18 CRS 85370 and 18 CRS 85784 to the trial court with instructions to arrest judgment on Defendant's convictions for assault on a female and assault by strangulation. We affirm the remaining judgments.

## *Background*

At the time of the events in question, Leslie Wilson was dating Defendant and, over the course of their relationship, she was repeatedly the victim of domestic violence. On or about 25 May 2018, Wilson and Defendant were drinking beer together when she noticed that Defendant "was getting ill[.]" Fearful that he would become violent, Wilson poured out the rest of the beer and locked herself in the bathroom. Defendant "broke two doors" attempting to reach Wilson in order to find out where she "hid the beer." He eventually gained entry into the bathroom and attacked her. Defendant held Wilson down on a bed and strangled her "with his elbow on [her] jawbone and [her] throat." Wilson "blacked out twice."

Defendant purportedly held Wilson captive for the next three days, when she was finally able to call 911.[1] Wilson required medical treatment, and she "was unable to eat food properly for about six weeks after the assault due to the condition of her [broken] jaw[.]" Defendant was subsequently charged with assault on a female,

---

[1] It is unclear from the record precisely when during Wilson's captivity the assault occurred.

violation of a domestic violence protective order, assault inflicting serious bodily injury, and assault by strangulation.

On 5 December 2018, Defendant's case came on for hearing in Buncombe County Superior Court before the Honorable Marvin P. Pope, Jr. Defendant agreed to plead guilty to each of the charged offenses. Under the terms of the proposed plea arrangement, the State agreed to consolidate the offenses into one Class F felony judgment, with Defendant receiving a sentence of 23–37 months in the custody of the North Carolina Division of Adult Correction.

The prosecutor presented the trial court with a statement of the factual basis for Defendant's guilty plea. However, after learning of Defendant's history of domestic violence and hearing Wilson's account of the events underlying his plea, the trial court rejected the proposed plea arrangement. The court provided the parties with an opportunity to renegotiate, and twenty-four minutes later, the parties presented the trial court with a modified plea arrangement, which did not provide for consolidated charges. Instead, under the terms of the modified plea arrangement, Defendant agreed to serve 23–37 months in prison for the Class F felony of assault inflicting serious bodily injury, followed by 15–27 months' imprisonment for the Class H felony of assault by strangulation. As for the Class A1 misdemeanor offenses of assault on a female and violation of a domestic violence protective order, Defendant

agreed to serve two 150-day suspended sentences "with supervised probation, consecutive to each other if ever activated."

The trial court accepted Defendant's guilty plea upon the prosecutor's prior statement of the factual basis, and entered judgment accordingly.

## *Petition for Writ of Certiorari*

A criminal defendant's limited right of appeal following his plea of guilty is provided by N.C. Gen. Stat. § 15A-1444(a1)-(a2) (2019). *State v. Jones*, 253 N.C. App. 789, 792, 802 S.E.2d 518, 521 (2017). The statute "explicitly grants [a] defendant the right to petition the appellate division for review by writ of certiorari." *Id.* at 793, 802 S.E.2d at 521 (internal quotation marks omitted). This Court may issue the writ of certiorari "in appropriate circumstances." N.C.R. App. P. 21(a)(1). The writ is discretionary, "to be issued only for good and sufficient cause shown." *State v. Rouson*, 226 N.C. App. 562, 563–64, 741 S.E.2d 470, 471 (citation omitted), *disc. review denied*, 367 N.C. 220, 747 S.E.2d 538 (2013). "A petition for the writ must show merit or that error was probably committed below." *Id.*

Lacking the statutory authority to appeal his case, on 5 August 2019, Defendant petitioned this Court to issue its writ of certiorari in accordance with N.C. Gen. Stat. § 15A-1444. Defendant requests review of the following issues: (1) that "the trial court placed improper pressure on [him] to enter a plea 'today' after rejecting the parties' negotiated agreement"; (2) that "[t]here was an insufficient factual basis

for the trial court to accept a plea and enter judgments on two of the three assault charges" where the evidence failed to establish more than one assault; (3) that "[t]he trial court considered improper and irrelevant matters at sentencing"; and (4) that the trial court denied him "his right of allocution at the sentencing hearing."

This Court may choose to issue its writ of certiorari "to review some issues that are meritorious but not others for which a defendant has failed to show good or sufficient cause." *State v. Ross*, 369 N.C. 393, 400, 794 S.E.2d 289, 293 (2016). After reviewing the record and arguments of the parties, we deny Defendant's petition for writ of certiorari as to the first, third, and fourth issues for which he requests appellate review. In our discretion, we allow his petition solely for the limited purpose of reviewing Defendant's second argument regarding the sufficiency of the factual basis for his guilty plea to three assault charges.[2]

### *Discussion*

Defendant contends that "[t]here was an insufficient factual basis for the trial court to accept a plea and enter judgments on two of the three assault charges." We agree.

### I.    *Standard of Review*

---

[2] We have previously allowed petitions for the writ of certiorari in order to permit review of appeals concerning the adequacy of the factual bases underlying defendants' guilty pleas. *See, e.g.*, *State v. Keller*, 198 N.C. App. 639, 641–42, 680 S.E.2d 212, 213–14 (2009).

Defendant raises an issue of statutory construction. "Issues of statutory construction are questions of law, reviewed de novo on appeal." *State v. Jamison*, 234 N.C. App. 231, 238, 758 S.E.2d 666, 671 (2014) (citation omitted). In reviewing an issue de novo, this Court "considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Id.* (citation omitted).

## II.    *Factual Basis for the Plea*

Defendant argues that "[t]he trial court erred when it accepted a plea and entered judgment on three assault charges because the State's factual summary and other evidence before the trial court did not establish more than one assault." For the following reasons, we agree.

"[G]uilty pleas must be substantiated in fact as prescribed by" N.C. Gen. Stat. § 15A-1022(c). *State v. Agnew*, 361 N.C. 333, 335, 643 S.E.2d 581, 583 (2007). "The judge may not accept a plea of guilty . . . without first determining that there is a factual basis for the plea." N.C. Gen. Stat. § 15A-1022(c). A factual basis may be provided by, *inter alia*, "[a] statement of the facts by the prosecutor." *Id.* § 15A-1022(c)(1). The trial court may also "consider any information properly brought to [its] attention in determining whether there is a factual basis for a plea of guilty[.]" *State v. Dickens*, 299 N.C. 76, 79, 261 S.E.2d 183, 186 (1980).

In the instant case, the State's summary of the factual basis for the plea was brief:

>       Your Honor, this occurred on May the 28th, 2018.
> Officers responded just after midnight that morning, Your
> Honor, to 37 Amirite Drive, A-m-i-r-i-t-e, Drive in Candler,
> North Carolina. The caller was Ms. Leslie Wilson who is
> present today, Your Honor. She stated that she'd been held
> captive by [D]efendant for three days and there was an
> active [domestic violence protective order] in place.
>
>       When officers arrived, Ms. Wilson was present and
> stated that [D]efendant, had grabbed her around the neck
> and that while he was choking her she had taken a box
> cutter from him. During the assault that occurred over that
> night, Your Honor, Ms. Wilson was punched a number of
> times causing a broken jaw and a dislodged breast implant.
> She also had small cuts on her hands that were consistent
> with the altercation, as well as bruising around her neck.
> Ms. Wilson describes that during the strangulation she was
> unable to breathe and felt like she was going to pass out.
> She had tenderness about her neck for a few days after.
> Additionally, she was unable to eat food properly for about
> six weeks after the assault due to the condition of her jaw,
> Your Honor. Thankfully, thanks to health insurance, she
> was not out-of-pocket any money for restitution which is
> why we're not seeking restitution in this case.

The State further noted that Wilson was "ready to move on with this relationship and

. . . this case[.]"

The State's factual summary indicated that this was a singular assault,

without distinct interruption, during which Wilson was strangled, beaten, and cut.

However, "[i]n order for a defendant to be charged with multiple counts of assault,

there must be multiple assaults. This requires evidence of a *distinct interruption* in

the original assault followed by a second assault." *State v. Williams*, 201 N.C. App.

161, 182, 689 S.E.2d 412, 424 (2009) (emphasis added) (citation omitted).

"[T]he dispositive issue . . . is whether the State presented substantial evidence of an interruption" between the assaults. *State v. Littlejohn*, 158 N.C. App. 628, 635, 582 S.E.2d 301, 307, *disc. review denied*, 357 N.C. 510, 588 S.E.2d 377 (2003); *see also State v. McPhaul*, 256 N.C. App. 303, 304, 318, 808 S.E.2d 294, 298, 306 (2017) (determining that there was no evidence of a distinct interruption in the assault where (1) the victim was first "hit on the head from behind and fell to the ground"; (2) after attempting to stand back up, the victim was "hit . . . in the right shin with a metal baseball bat," causing him to fall again; and (3) while on the ground, the victim was struck again in the face), *disc. review improvidently allowed*, 371 N.C. 467, 818 S.E.2d 102 (2018) (per curiam); *State v. Brooks*, 138 N.C. App. 185, 188–90, 530 S.E.2d 849, 852–53 (2000); *State v. Dilldine*, 22 N.C. App. 229, 231, 206 S.E.2d 364, 366 (1974).

In the case at bar, nothing in the State's factual summary suggests that there was a distinct interruption that would support multiple assault convictions. Close examination of the prosecutor's language shows that she only referenced a singular assault during her summary of the factual basis for the plea arrangement, in which she described "*the assault* that occurred over that night[.]" (Emphasis added). The prosecutor also mentioned cuts on Wilson's hands that "were consistent with *the altercation*"—again, singular—between Wilson and Defendant. (Emphasis added).

Moreover, Wilson's statement to the trial court at the hearing provided no evidence of a distinct interruption in the assault:

> We were both drinking and he was getting ill, so I dumped all the beer out. Dumped out everything I could find. And then I locked myself in the bathroom. And he broke two doors trying to get to me and he kept telling me to tell him where I had hid the beer. I didn't want to tell him then that I'd poured it out because I was so afraid. But I poured it out, trying to keep him from getting to this point. And then he got after me and I had a box cutter, which I was trying to defend myself at that point, and he held me down on the bed. I actually blacked out twice. And when he was strangling me and told me I needed to learn where the pressure points was, with his elbow on my jawbone and my throat. And then when I got back up I did -- I had the box cutter but I was trying -- I was scared to death. I thought he was going to kill me. I couldn't even hardly talk.

The fact that Defendant held Wilson captive for three days does not, alone, compel the conclusion that he committed multiple assaults against Wilson during that period. Given the factual summary delivered by the State, and the lack of "substantial evidence of an interruption" in the assault, *Littlejohn*, 158 N.C. App. at 635, 582 S.E.2d at 307, we conclude that Defendant has shown that the State did not provide a sufficient factual basis for the trial court to accept his guilty plea and enter judgments on multiple assault charges.

### III.    *Separate Punishments*

Defendant further maintains that, because the State's factual basis for his guilty plea was insufficient to support multiple assault convictions, we should "vacate

the judgments in this matter and remand to the trial court with instructions to arrest the judgments" for assault on a female and assault by strangulation.

Identical prefatory language is found in N.C. Gen. Stat. §§ 14-32.4(a), (b), and 14-33(c), with each providing that these statutes apply "[u]nless the conduct is covered under some other provision of law providing *greater* punishment[.]" N.C. Gen. Stat. §§ 14-32.4(a)-(b), 14-33(c) (emphasis added). Our Supreme Court recently addressed this prefatory language in *State v. Fields*, 374 N.C. at 632, 843 S.E.2d at 189. In that case, the issue presented was "whether [the] defendant could lawfully be convicted and sentenced for both habitual misdemeanor assault and felony assault where both offenses arose from the same assaultive act." *Id.* The *Fields* Court agreed with this Court's previous conclusion that the defendant "could not be separately convicted and punished for both misdemeanor assault and felony assault based on the same conduct due to the above-quoted prefatory language[.]" *Id.* at 633, 843 S.E.2d at 189.

In reaching this conclusion, our Supreme Court was guided by its review of identical prefatory language in another criminal statute. *Id.* at 634, 843 S.E.2d at 190. In *State v. Davis*, 364 N.C. 297, 306, 698 S.E.2d 65, 70 (2010), the issue was whether the defendant could be sentenced and punished for both felony serious injury by vehicle and assault with a deadly weapon inflicting serious injury arising from the same underlying conduct. *Davis*, 364 N.C. at 298, 698 S.E.2d at 66. The *Davis* Court

held that the General Assembly's inclusion of the same prefatory language found in N.C. Gen. Stat. § 20-141.4(b) (establishing punishments for various death or serious injury by vehicle offenses) as in those sections at issue here signaled the legislature's intention not to "authorize punishment for the enumerated offenses when punishment is imposed for higher class offenses that apply to the same conduct." *Id.* at 305, 698 S.E.2d at 70. "In such situations . . . the General Assembly intended an alternative: that punishment is *either* imposed for the more heavily punishable offense *or* for the section 20-141.4 offense, but not both." *Id.* at 304, 698 S.E.2d at 69. Accordingly, "the trial court . . . was not authorized to sentence [the] defendant for felony death by vehicle and felony serious injury by vehicle" in contravention of the clear intent and plain language of our General Assembly. *Id.* at 305, 698 S.E.2d at 70.

Based on the holding in *Davis*, the *Fields* Court concluded that "this same prefatory language would serve to prevent [the] defendant from being separately punished for both misdemeanor assault and felony assault." *Fields*, 374 N.C. at 634, 843 S.E.2d at 190. The *Fields* Court further explained that the absence of similar prefatory language in the habitual misdemeanor assault statute did not render that language wholly inapplicable. *Id.* Indeed, "in order for [the] defendant to be guilty of habitual misdemeanor assault, his conduct had to have first violated the misdemeanor assault statute." *Id.* at 635, 843 S.E.2d at 190.

> [The] defendant's guilt of habitual misdemeanor assault required that he first have violated the misdemeanor assault statute. But because the prefatory language of the misdemeanor assault statute was triggered, his conduct was not deemed to constitute a violation of that statute. Thus, absent a violation of the misdemeanor assault statute, he could not be guilty of habitual misdemeanor assault, and as a result, the trial court erred in sentencing him for that offense.

*Id.* at 635, 843 S.E.2d at 191.

In sum,

> [t]he effect of the prefatory language . . . did not simply disappear upon the misdemeanor assault conviction being upgraded to a conviction for habitual misdemeanor assault. Accordingly, the fact that the General Assembly did not repeat the prefatory language in the habitual misdemeanor assault statute is of no consequence. Once [the] defendant was found guilty of both misdemeanor assault and felony assault, this invoked the prefatory language of the misdemeanor assault statute, which served to invalidate the misdemeanor assault conviction. This, in turn, meant that [the] defendant could not be punished for habitual misdemeanor assault.

*Id.* at 635–36, 843 S.E.2d at 191.

The analysis in *Fields* guides our resolution of the case at bar. Because the factual basis for Defendant's guilty plea, as delivered by the prosecutor, supported just one assault conviction, the trial court was only authorized to enter judgment and sentence Defendant for one assault—that which provided for the greatest punishment of the three assault offenses to which Defendant pleaded guilty. *See id.* Assault inflicting serious bodily injury is a Class F felony. N.C. Gen. Stat. § 14-

32.4(a). By comparison, assault by strangulation (a Class H felony), *id.* § 14-32.4(b), and assault on a female (a Class A1 misdemeanor), *id.* § 14-33(c)(2), are lesser offenses. Accordingly, Defendant could only be punished for the offense of assault inflicting serious bodily injury, and not for the other two assault offenses as well.

### *Conclusion*

For the reasons stated herein, the trial court lacked authority to enter judgment and sentence Defendant for assault on a female and assault by strangulation where his convictions were based upon the same underlying conduct as his conviction for assault inflicting serious bodily injury. As our Supreme Court explained in *Fields*, the appropriate course of action is to arrest judgment on Defendant's convictions for assault on a female in 18 CRS 85370, and assault by strangulation in 18 CRS 85784. *Fields*, 374 N.C. at 636–37, 843 S.E.2d at 191; *see also State v. Carter*, 167 N.C. App. 582, 586, 605 S.E.2d 676, 679 (2004) (arresting judgment on one of three convictions, while affirming the remaining judgments).[3]

Because Defendant was sentenced pursuant to a modified plea arrangement, which did not consolidate the charges against him, and because we conclude that two of the judgments must be arrested, we remand to the trial court with instructions to arrest the judgments entered in 18 CRS 85370 and 18 CRS 85784, and to resentence

---

[3] We reiterate that we allowed Defendant's petition for writ of certiorari for the limited purpose of addressing this sole issue; therefore, we decline to address Defendant's additional arguments.

Defendant on the remaining charges, consistent with this opinion. We affirm the remaining judgments.

AFFIRMED IN PART; REMANDED FOR RESENTENCING.

Judge YOUNG concurs.

Judge BERGER dissents by separate opinion.

BERGER, Judge, dissenting in separate opinion.

I respectfully dissent.

A defendant seeking a writ of certiorari from this Court "must show merit or that error was probably committed below." *State v. Killette*, 268 N.C. App. 254, 256 834 S.E.2d 696, 698 (2019) (citation and quotation marks omitted). In addition, the petitioner must also demonstrate "that the ends of justice will be [ ] promoted." *King v. Taylor*, 188 N.C. 450, 451, 124 S.E. 751, 751 (1924). Defendant here has failed to make the required showing, and I would deny certiorari.

Defendant pleaded guilty to assault on a female in violation of N.C. Gen. Stat. § 14-33(c)(2), assault inflicting serious bodily injury in violation of N.C. Gen. Stat. § 14-32.4, and assault by strangulation in violation of N.C. Gen. Stat. § 14-32.4(b). In addition, Defendant pleaded guilty to violation of a domestic violence protective order.

Defendant argues that "[t]he trial court erred when it accepted a plea and entered judgment on three assault charges because the State's factual summary and other evidence before the trial court did not establish more than one assault." However, the factual showing demonstrated that Defendant (1) grabbed the victim by her neck and choked her;[4] (2) punched the victim in the face and chest, breaking her jaw and dislodging a breast implant;[5] and (3) placed his forearm on the victim's

---

[4] Charged in 18 CRS 85370 as assault on a female pursuant to N.C. Gen. Stat. § 14-33(c)(2).

[5] Charged in 18 CRS 85783 as assault inflicting serious bodily injury pursuant to N.C. Gen. Stat. § 14-32.4.

neck causing bruising and restricting her airflow.[6] Because Defendant's separate and distinct actions are not the same conduct, I respectfully dissent.

Here, in an opinion woefully short on analysis, the majority concludes that nothing in the State's factual summary suggests there was "substantial evidence of an interruption" that would support multiple assault convictions. In reaching this result, the majority ignores binding precedent and fails to conduct an analysis under *State v. Rambert*, 341 N.C. 173, 459 S.E.2d 510 (1995).

Precedent in *State v. Dew*, ___ N.C. App. ___, 840 S.E.2d 301 (2020), which the majority fails to discuss or distinguish, sets forth the proper analysis on the issue of multiple assaults.

> "In order for a defendant to be charged with multiple counts of assault, there must be multiple assaults." *State v. McCoy*, 174 N.C. App. 105, 115, 620 S.E.2d 863, 871 (2005) (citation and quotation marks omitted). To establish that multiple assaults occurred, there must be "a distinct interruption in the original assault followed by a second assault[,] so that the subsequent assault may be deemed separate and distinct from the first." *State v. Littlejohn*, 158 N.C. App. 628, 635, 582 S.E.2d 301, 307 (2003) (*purgandum*). To determine whether Defendant's conduct was distinct, we are to consider: (1) whether each action required defendant to employ a separate thought process; (2) whether each act was distinct in time; and (3) whether each act resulted in a different outcome. *State v. Rambert*, 341 N.C. 173, 176-77, 459 S.E.2d 510, 513 (1995).
>
> In *State v. Wilkes*, 225 N.C. App. 233, 736 S.E.2d 582 (2013), the defendant initially punched the victim in the

---

[6] Charged in 18 CRS 85784 as assault by strangulation pursuant to N.C. Gen. Stat. § 14-32.4(b).

face, breaking her nose, causing bruising to her face, and damaging her teeth. The victim's son entered the room where the incident occurred with a baseball bat and hit the defendant. *Id.* at 235, 736 S.E.2d at 585. The defendant was able to secure the baseball bat from the child, and he began striking the victim with it. *Id.* at 235, 736 S.E.2d at 585. The defendant's actions in the subsequent assault "crushed two of [the victim]'s fingers, broke[] bones in her forearms and her hands, and cracked her skull." *Id.* at 235, 736 S.E.2d at 585.

This Court, citing our Supreme Court in *Rambert*, determined that there was not a single transaction, but rather "multiple transactions," stating, "[i]f the brief amount of thought required to pull a trigger again constitutes a separate thought process, then surely the amount of thought put into grabbing a bat from a twelve-year-old boy and then turning to use that bat in beating a woman constitutes a separate thought process." *Wilkes*, 225 N.C. App. at 239-40, 736 S.E.2d at 587.

In *State v. Harding*, 258 N.C. App. 306, 813 S.E.2d 254, 263, *writ denied, review denied*, 371 N.C. 450, 817 S.E.2d 205 (2018), this Court again applied the "separate-and-distinct-act analysis" from *Rambert*, and found multiple assaults "based on different conduct." *Id.* at 317, 813 S.E.2d at 263. There, the defendant "grabb[ed the victim] by her hair, toss[ed] her down the rocky embankment, and punch[ed] her face and head multiple times." *Id.* at 317, 813 S.E.2d at 263. The defendant also pinned down the victim and strangled her with his hands. This Court determined that multiple assaults had occurred because the "assaults required different thought processes. Defendant's decisions to grab [the victim]'s hair, throw her down the embankment, and repeatedly punch her face and head required a separate thought process than his decision to pin down [the victim] while she was on the ground and strangle her throat to quiet her screaming." *Id.* at 317-18, 813 S.E.2d at 263. This Court also concluded that the assaults were distinct in time, and that the victim

> sustained injuries to different parts of her body because
> "[t]he evidence showed that [the victim] suffered two black
> eyes, injuries to her head, and bruises to her body, as well
> as pain in her neck and hoarseness in her voice from the
> strangulation." *Id.* at 318, 813 S.E.2d at 263.

*Dew*, ___ N.C. App. at ___, 840 S.E.2d at 304-05.

The majority on this panel once again "reaches this result without conducting

a *Rambert* analysis, or discussing that decision from our Supreme Court." *State v.*

*Prince*, ___ N.C. App. ___, 843 S.E.2d 700, 705 (2020) (Berger, J., dissenting). The

majority, as it did in *Prince*, relies on *State v. Williams*, 201 N.C. App. 161, 689 S.E.2d

412 (2009), which also failed to discuss *Rambert*, and *State v. McPhaul*, 256 N.C. App.

303, 808 S.E.2d 294 (2017), which involved a robbery with a baseball bat in which the

victim was struck three times in succession.

At the plea hearing, the State presented the following factual basis to the court:

> Your Honor, this occurred on May the 28th, 2018. Officers
> responded just after midnight that morning, Your Honor,
> to 37 Amirite Drive, A-m-i-r-i-t-e, Drive in Candler, North
> Carolina. The caller was Ms. Leslie Wilson who is present
> today, Your Honor. She stated that she'd been held captive
> by [ ] [D]efendant for three days and there was an active
> [domestic violence protective order] in place.
>
> When officers arrived, Ms. Wilson was present and
> stated that . . . [D]efendant, had grabbed her around the
> neck and that while he was choking her she had taken a
> box cutter from him. During the assault that occurred over
> that night, Your Honor, Ms. Wilson was punched a number
> of times causing a broken jaw and a dislodged breast
> implant. She also had small cuts on her hands that were
> consistent with the altercation, as well as bruising around
> her neck. Ms. Wilson describes that during the

4

strangulation she was unable to breathe and felt like she was going to pass out. She had tenderness about her neck for a few days after. Additionally, she was unable to eat food properly for about six weeks after the assault due to the condition of her jaw, Your Honor. Thankfully, thanks to health insurance, she was not out-of-pocket any money for restitution which is why we're not seeking restitution in this case.

Additionally, the victim stated:

We were both drinking and he was getting ill, so I dumped all the beer out. Dumped out everything I could find. And then I locked myself in the bathroom. And he broke two doors trying to get to me and he kept telling me to tell him where I had hid the beer. I didn't want to tell him then that I'd poured it out because I was so afraid. But I poured it out, trying to keep him from getting to this point. And then he got after me and I had a box cutter, which I was trying to defend myself at that point, and he held me down on the bed. I actually blacked out twice. And when he was strangling me and told me I needed to learn where the pressure points was, with his elbow on my jawbone and my throat. And then when I got back up I did – I had the box cutter but I was trying – I was scared to death. I thought he was going to kill me. I couldn't even hardly talk.

Based on this factual showing, the trial court could determine that Defendant (1) grabbed the victim by her neck and choked her; (2) punched the victim in the face and chest, breaking her jaw and dislodging a breast implant; and (3) placed his forearm on the victim's neck causing bruising and restricting her airflow. Properly analyzed under *Rambert*, Defendant's conduct consisted of at least three separate and distinct acts.

Defendant's decisions to grab the victim by the throat, strike the victim in the face and chest, and place his forearm upon her neck each required a different thought process. *Rambert*, 341 N.C. at 176-77, 459 S.E.2d at 513; *see also Harding*, 258 N.C. App. at 317-18, 813 S.E.2d at 263 (finding that the defendant's decisions to grab the victim's hair, throw her down the embankment, and repeatedly punch her face and head required a separate thought process than his decision to pin down the victim while she was on the ground and strangle her throat to quiet her screaming).

Moreover, the assaults were distinct in time. The trial court could infer that the assaults did not, and could not, occur simultaneously. The factual showing clearly set forth that Defendant first grabbed the victim by her neck and choked her. Defendant had to cease choking the victim with his hands in order to punch the victim in the face and chest with his fists. Defendant then had to cease punching the victim in order to place his forearm on the victim's neck. Defendant could not strike the victim with both fists and still carry out the assault by strangulation. *See Dew*, ___ N.C. App. at ___, 840 S.E.2d at 304-05; *see also Prince*, ___ N.C. App. at ___, 843 S.E.2d at 705 (Berger J., dissenting) (noting that the two assaults were distinct in time because the defendant had to cease punching the victim in order to carry out the assault by strangulation).

Finally, the injuries sustained by the victim were to different body parts. *Rambert*, 341 N.C. App. at 176-77, 459 S.E.2d at 513. The injuries from the assault

inflicting serious bodily injury were a broken jaw and a dislodged breast implant, while the assault by strangulation resulted in a bruised neck and the inability to eat food for six weeks. *See Harding*, 258 N.C. App. at 318, 813 S.E.2d at 263 (finding that the assaults were separate and distinct because the evidence showed that the victim sustained injuries to different parts of her body). The State was not required to prove or otherwise show that Defendant injured the victim for the assault on a female conviction. Rather, the State was only required to demonstrate that Defendant was over the age of eighteen when he committed an assault on a female victim. *See* N.C. Gen Stat. § 14-33(c)(2) (2019).

Here, the trial court could have reasonably inferred from the factual showing that Defendant committed an assault on a female pursuant to N.C. Gen Stat. § 14-33(c)(2), an assault inflicting serious bodily injury pursuant to N.C. Gen. Stat. § 14-32.4, and an assault by strangulation pursuant to N.C. Gen. Stat. § 14-32.4(b) because of Defendant's separate and distinct actions.